**Danielle J. PITTSLEY, et al.,
Plaintiffs, Appellants,**

v.

**Sergeant Philip WARISH, et al.,
Defendants, Appellees.**

**No. 90–1372.**

United States Court of Appeals,
First Circuit.

Heard Nov. 9, 1990.

Decided Feb. 27, 1991.

Rehearing and Rehearing En Banc Denied
April 17, 1991.

**4**

David G. Oedel with whom Gaston & Snow was on brief, Boston, Mass., for plaintiffs, appellants.

Edward B. McGrath with whom Thomas B. Farrey, III and Burns & Farrey were on brief, Worcester, Mass., for defendants, appellees.

\* Of the Fifth Circuit, sitting by designation.

\*\* Of the District of Massachusetts, sitting by designation.

1. Honorable Rya W. Zobel, United States District Judge, presiding.

Before BREYER, Chief Judge, BROWN,\* Senior Circuit Judge, and CAFFREY,\*\* Senior District Judge.

CAFFREY, Senior District Judge.

Plaintiffs, Donna J. Pittsley and her two children, Joseph and Danielle, sued the City of Taunton and several of its police officers pursuant to 42 U.S.C. § 1983, alleging violations of their civil rights under the United States Constitution. Plaintiffs also alleged pendent state claims under the Massachusetts Civil Rights Act, Mass.Gen.L. ch. 12 § 11I, intentional and negligent infliction of emotional distress, and inadequate or negligent supervision. The police officers sued included Sergeant Philip Warish and several other unknown officers. At the close of the plaintiffs' evidence, the trial court directed verdicts for the defendants on all of the children's claims.[1] The district court also directed verdicts for the City of Taunton on all counts. Ms. Pittsley's remaining constitutional and tort claims against the individual defendants were sent to the jury. The jury returned verdicts finding that the defendants were not liable on any of the remaining claims. Plaintiffs then appealed. The issues on appeal include the appropriateness of the directed verdicts, the exclusion of certain evidence and other evidentiary rulings.[2] After carefully reviewing the record and the appellants' arguments, we affirm the district court's rulings and the jury's verdict.

## I.

We begin by stating the relevant facts in the light most favorable to the plaintiffs. *See Kinan v. Brockton,* 876 F.2d 1029, 1036 (1st Cir.1989). The plaintiffs', Donna Pittsley and her two children, Joseph and Danielle, suit arises out of four incidents alleged to have occurred between the Pittsleys and the Taunton police. Joseph was approximately four at the time of the events complained of, and Danielle was ap-

2. No appeal has been taken from the directed verdict for the defendants on the state civil rights and tort claims.

proximately ten. Herbert Egersheim, a live-in companion during 1987, was neither the husband of Donna Pittsley nor the biological father of the children.

During the first incident, which occurred in late August or September, 1987, two Taunton police officers drove their police car into the Pittsley's driveway and asked the children whether their mother or father was home. After the children responded that their parents were not home, the officers told Joseph and Danielle "if we see your father [Herbert Egersheim] on the streets again, you'll never see him again." The second incident involved a conversation between Ms. Pittsley and two Taunton police officers, Philip Warish and another unknown officer. This incident occurred a few weeks after the first incident, again at the Pittsley home. During the conversation between Ms. Pittsley and the two officers, the unknown officer said in the presence of Warish, that he wanted to break Egersheim's "F'n kneecaps" and threatened that he was going to kill Ms. Pittsley.

The next incident occurred several days later, on October 5, 1987, when the police arrived at the Pittsley's home with a valid arrest warrant for the arrest of Egersheim. Ms. Pittsley testified that Warish, while executing the arrest warrant, "treated my children very badly" although "he did not put his hands on them." She further stated, "my children wanted to give Herbert a hug and a kiss goodbye," but Warish refused to let them, "using vulgar language." The next morning, Ms. Pittsley filed an internal civilian complaint against Officer Warish at the police station, alleging that Warish had threatened to do bodily harm to her; and disturbed the peace, in particular by frightening her children.

Finally, the last incident complained of occurred a few days after the arrest of Egersheim when Warish saw Ms. Pittsley in the hall of the courthouse. Warish allegedly told her that she had no right to file a court complaint against him, and if she went ahead with it, he would "get her." Ms. Pittsley testified that Warish also stated that if she showed up at the complaint hearing, he would kill her. Thereafter, the plaintiffs allege they moved from Taunton out of fear for their lives.

Early in the trial, the district court denied plaintiffs' motion *in limine*, the denial of which allowed the defendants' counsel to elicit information from Ms. Pittsley concerning a prior gun-possession charge of which she was later acquitted. The gun charge stemmed from incidents that occurred on August 11, 1987, when defendant Philip Warish arrested Ms. Pittsley for motor vehicle violations and possession of an unregistered handgun. Warish also testified against her at the criminal trial which arose out of these charges. Ms. Pittsley was eventually acquitted on the gun charge but was convicted of attaching license plates to a motor vehicle and driving an unregistered vehicle.

At the conclusion of all the evidence, the district court judge granted the City of Taunton's motion for a directed verdict. The judge also directed a verdict as to the constitutional and pendent state claims of Joseph and Danielle Pittsley. After deliberation, the jury returned a verdict in favor of the sole remaining defendant, Philip Warish. The plaintiffs then appealed the entry of the directed verdicts on the civil rights counts and certain evidentiary rulings made by the district court judge.

## II.

In reviewing a directed verdict, this Court will view the evidence and will make all reasonable inferences in the light most favorable to the plaintiff. The question is whether when the evidence is seen in this light, reasonable jurors could come to but one conclusion. *Kinan v. Brockton*, 876 F.2d at 1036; *Kuras v. International Harvester Co.*, 820 F.2d 15, 17 (1st Cir.1987). *Wildman v. Lerner Stores Corp.*, 771 F.2d 605, 607 (1st Cir.1985); *Goldstein v. Kelleher*, 728 F.2d 32, 39 (1st Cir.), *cert. denied*, 469 U.S. 852, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984). We now turn to an application of this standard to the plaintiffs' arguments raised on appeal relating to the directed verdicts.

The first issue raised by the plaintiffs is whether the district court erred in directing

a verdict for the defendants on Danielle and Joseph's constitutional claims. The plaintiffs argue that the defendants' conduct violated a right or privilege protected by their constitutional right to due process. Specifically, the children allege violations of the right to family associational privacy, court access, and substantive due process. In response, the defendants argue that the children's claims were properly dismissed because the plaintiffs failed to establish at trial the deprivation of any constitutionally protected right.

To prevail in an action brought under 42 U.S.C. § 1983, a plaintiff must show that he or she was deprived of a right, immunity, or privilege secured by the constitution or laws of the United States by a person acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981); *Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979). There is no question that the individual defendants, in their capacity as officers of the City of Taunton Police Department, acted under color of state law. *See Monroe v. Pape*, 365 U.S. 167, 171, 81 S.Ct. 473, 475, 5 L.Ed.2d 492 (1961). Therefore, the question becomes whether the actions and statements made by the police constituted a violation of the children's constitutional rights actionable under § 1983.

 Due process claims may take either of two forms: "procedural due process" or "substantive due process." *See generally Hall v. Tawney*, 621 F.2d 607, 610–13 (4th Cir.1980). Procedural due process requires that the procedures provided by the state in effecting the deprivation of liberty or property are adequate in light of the affected interest. Substantive due process, however, imposes limits on what a state may do regardless of what procedural protection is provided. *See Monroe v. Pape*, 365 U.S. at 171–72, 81 S.Ct. at 475; *Rochin v. California*, 342 U.S. 165, 169, 72 S.Ct. 205, 208, 96 L.Ed. 183 (1952). In this case, it is the state's conduct that is challenged by the plaintiffs as being impermissible, not the adequacy of the procedure.

Thus, we examine plaintiffs' claims under the rubric of substantive due process.

 The Supreme Court has enunciated two alternative tests by which substantive due process is examined. Under the first theory, it is not required that the plaintiffs prove a violation of a specific liberty or property interest; however, the state's conduct must be such that it "shocks the conscience." *See Rochin*, 342 U.S. at 172, 173, 72 S.Ct. at 209–10. To succeed under the second theory, a plaintiff must demonstrate a violation of an identified liberty or property interest protected by the due process clause. *See Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923); *see also Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983) (state must provide medical care to persons with serious medical needs while in state custody); *Youngberg v. Romeo*, 457 U.S. 307, 315, 319, 102 S.Ct. 2452, 2457, 2459, 73 L.Ed.2d 28 (1982) (individual committed to a state institution has a protected liberty interest in receiving reasonably safe living conditions and freedom from unreasonable bodily restraints); *Ingraham v. Wright*, 430 U.S. 651, 673, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977) (corporal punishment of a student inflicted by a public school teacher violates substantive due process); *Landrigan v. Warwick*, 628 F.2d 736, 741–42 (1st Cir.1980) (substantive due process implicated where a policeman uses excessive force in the apprehension of a suspect).

We must now consider whether, under the first theory, the state's conduct is such that it "shocks the conscience" or "offends the community's sense of fair play and decency." *See Rochin*, 342 U.S. at 172, 173, 72 S.Ct. at 209–10; *see also Johnson*, 481 F.2d at 1033; *Schiller v. Strangis*, 540 F.Supp. 605, 614 (D.Mass.1982). In *Rochin v. California*, the Supreme Court held that due process was violated when evidence was admitted at trial that had been obtained by subjecting the suspect, against his will, to a stomach pump because this police conduct was so egregious as to "shock the conscience" offending even "hardened sensibilities." *See Rochin*, 342

U.S. at 172, 72 S.Ct. at 209–10. The Court indicated, however, that the activities complained of must "do more than offend some fastidious squeamishness or private sentimentalism." *Id.* at 172, 72 S.Ct. at 209. Not all unlawful force or violence used by a state actor rises to the level of a constitutional violation and "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the constitution." *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.) (prison guard's use of a certain degree of force does not violate a protected liberty interest), *cert. denied sub. nom., John v. Johnson*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973); *see also Oklahoma City v. Tuttle*, 471 U.S. 808, 818, 105 S.Ct. 2427, 2433, 85 L.Ed.2d 791 (1985) (not every instance of the use of "unreasonable force in effecting an arrest constitutes a violation" of the constitution).

■ The plaintiffs contend, that in light of the vulnerability of young children, the officer's statement that the children would never see Egersheim again, and their refusal to allow the children to "hug and kiss" Egersheim goodbye at the time of his arrest was so brutal, offensive and intimidating as to "shock the conscience." The children's alleged fear or trauma which resulted from these spoken words and actions in this instance, however, is not sufficient to rise to the level of a constitutional violation under the standard enunciated in *Rochin. See Rochin*, 342 U.S. at 172, 72 S.Ct. at 209; *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir.1989); *Keyes v. Albany*, 594 F.Supp. 1147, 1155 (N.D.N.Y.1984). *But see White v. Rochford*, 592 F.2d 381, 385–86 (7th Cir.1979). As despicable and wrongful as it may have been, the single threat made by the officers is not sufficient to "shock the conscience."[3]

In sum, the court is presented with a situation where state officials may have misused their authority. The plaintiffs, however, have not established a violation of any constitutionally recognized right.

While we certainly do not condone the acts of the police in this instance, the conduct complained of simply is not cognizable under § 1983.

Under the second theory of substantive due process, plaintiffs must establish that the alleged threats made by the police officers to the Pittsleys violated a specific constitutional guarantee or liberty interest protected by the substantive due process clause. The children claim that as a result of the threats made by the officers, their familial relationship was adversely affected in violation of their right to "family associational privacy" and "court access." The children argue that the recognized liberty interest in protecting the parent-child relationship should extend to encompass the children's claims for any emotional or psychological injuries they may have suffered as a result of the threats by the police officers. In light of Supreme Court precedent and this Court's holding in *Ortiz v. Burgos*, 807 F.2d 6, 9–10 (1st Cir.1986), we decline to do so.

■ It is well established that not every state tort constitutes a violation of a protected federal right simply because it is committed by the state. *See Ortiz*, 807 F.2d at 9. The Constitution does not protect against all intrusions on one's peace of mind. Fear or emotional injury which results solely from verbal harassment or idle threats is generally not sufficient to constitute an invasion of an identified liberty interest. *See Johnson*, 481 F.2d at 1032–33; *Emmons*, 874 F.2d at 353 (threats causing fear for plaintiff's life not an infringement of a constitutional right, thus not actionable under § 1983); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir.1979) (allegations that sheriff laughed at prisoner and threatened to "hang him" was not sufficient to establish a constitutional violation); *Lamar v. Steele*, 698 F.2d 1286, 1286 (5th Cir.) (claim based on "mere words" or "idle threats" not sufficient to establish a violation of substantive due process), *cert. denied*, 464 U.S. 821, 104 S.Ct. 86, 78

---

**3.** This does not mean that under no circumstances will verbal threats or harassment rise to the level of a constitutional violation.

L.Ed.2d 95 (1983); *Bibbo v. Mulhern*, 621 F.Supp. 1018, 1025 (D.Mass.1985) (verbal abuse and harassment falling short of physical force was not the type of conduct which substantive due process provides redress); *Keyes*, 594 F.Supp. at 1155 (use of vile and abusive language, no matter how abhorrent or reprehensible is not actionable under § 1983). *But see White v. Rochford*, 592 F.2d 381, 385 (7th Cir.1979) (children abandoned by police on cold evening which resulted in physical and emotional injuries constituted a violation of a protected "liberty interest").

 Furthermore, in order to establish a violation of a right to familial associational privacy, the state action must be directly aimed at the parent-child relationship. *See Ortiz*, 807 F.2d at 8. In *Ortiz v. Burgos*, the narrow issue before this Court was whether the step-father and siblings had a constitutionally protected interest in the association and companionship of their adult son and brother who was unlawfully killed by the police. *Id.* at 7. This Court reasoned that the precedent could be divided into two categories of constitutional protections. Under the first category, substantive due process has been applied to prevent government interference in certain particularly private decisions. *Ortiz*, 807 F.2d at 8 (citing *Griswold v. Connecticut*, 381 U.S. 479, 486, 85 S.Ct. 1678, 1682, 14 L.Ed.2d 510 (1965) (procreation) and *Pierce v. Society of Sisters*, 268 U.S. 510, 535, 45 S.Ct. 571, 573, 69 L.Ed. 1070 (1925) (whether to school one's children in religious matters)). Regarding the second category, the Court has recognized that there is a liberty interest in "preventing government interference with the rearing of young children." *Ortiz*, 807 F.2d at 8 (citing *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599 (1982) (termination of parental rights) and *Little v. Streater*, 452 U.S. 1, 13, 101 S.Ct. 2202, 2209, 68 L.Ed.2d 627 (1981) (determining paternity)). This second category is implicated whenever the state directly seeks to change or affect the parent-child relationship. State action that affects the parental relationship only incidentally, however, even though the deprivation may be perma-

nent, as in the case of unlawful killing by the police, is not sufficient to establish a violation of a identified liberty interest. *Ortiz*, 807 F.2d at 8. Therefore, only the person toward whom the state action was directed, and not those incidentally affected, may maintain a § 1983 claim.

The implications of the plaintiffs' attempt to extend the liberty interest protected by substantive due process to include indirect state action having only an incidental effect upon familial association are far-reaching. As we noted in *Ortiz:*

[a] conclusion that governmentally caused termination of, or encroachment on, the parental interest in the continued relationship with a child always is actionable would constitutionalize adjudication in a myriad of situations we think inappropriate for due process scrutiny, including the alleged wrongful prosecution and incarceration of a child or the alleged wrongful discharge of a child from a state job, forcing the child to seek employment in another part of the country. Moreover, the problem of giving definition and limits to a liberty interest in this vast area seems ... exceedingly difficult. . . .

*Id.* at 9. Furthermore, most courts which have recognized a protected right to familial association, and allowed parents or their children to recover under § 1983 for alleged unconstitutional conduct primarily directed toward another family member have done so only where the plaintiffs have alleged a permanent, physical loss of association of an immediate family member as a result of unlawful state action. *See, e.g., Bell v. Milwaukee*, 746 F.2d 1205, 1244–45 (7th Cir.1984) (father, but not siblings, may recover under § 1983 for deprivation of liberty interest where police officers shot and killed son); *Kelson v. Springfield*, 767 F.2d 651, 655 (9th Cir.1985) (parents may recover under § 1983 for violation of a liberty interest where public school failed to prevent son from committing suicide); *Trujillo v. Board of County Comm'rs*, 768 F.2d 1186, 1188–89 (10th Cir.1985) (parent may recover under § 1983 where government action resulted in the wrongful death

of their son). We now turn to an application of these principles to the present case.

■ The children cite the following three incidents of police misconduct that they allege violated their substantive due process rights. The first incident involved the statement made by two unknown Taunton police officers to the children. During this incident the two officers allegedly said to the children, "if we see your father on the streets again, you'll never see him again." The second incident complained of involved the arrest, pursuant to a valid search warrant, of Herbert Egersheim. During the arrest, it is alleged that the children were treated very badly by Officer Warish because he refused to let the children give Egersheim a hug and kiss good-bye. Finally, the children argue that threats made by Officer Warish and other unknown officers to their mother, Donna Pittsley, violated their constitutional rights.

The officers' actions and statements made directly to the children did not constitute a violation of any protected liberty interest. The acts complained of did not result in a physical touching or physical injury, and, thus, fall short of the type of conduct which the due process clause was intended to protect. *See Johnson,* 481 F.2d at 1032; *Bibbo,* 621 F.Supp. at 1025. Moreover, there was no evidence that any act of the police with respect to the alleged threats made to the mother was directly aimed at the relationship between a parent and child. Only the person toward whom the state action was directed, and not those incidentally affected, may maintain a § 1983 claim. *See Ortiz,* 807 F.2d at 8. Therefore, we find *Ortiz* controlling in this case. We do not believe the liberty interest protected by the substantive due process clause was intended to protect every conceivable family relationship from governmental interference, no matter how far removed, especially when the resulting deprivation is only an incidental result of that conduct. Accordingly, we find that the

children have failed to allege a constitutionally cognizable claim for violation of a right to "familial associated privacy" and "court access." Therefore, the district court was correct in directing a verdict on the children's, Joseph and Danielle, constitutional claims.

■ The remaining issues raised on appeal regarding the municipal liability claims, as well as the evidentiary rulings raised relating to the claims against the City of Taunton, have become moot and are not addressed in light of our disposition of the primary issues of this appeal.[4]

### III.

■ Finally, plaintiff, Ms. Pittsley, assigns error to the admission of evidence pertaining to her arrest on gun-possession charges of which she was acquitted. Defendants argue, pursuant to Fed.R.Evid. 403 and 404(b), that the evidence involving the circumstances of the plaintiff's arrest and trial on the gun possession and motor vehicular charges were properly admissible to show plaintiff's motive and bias in bringing this lawsuit in light of Officer Warish's involvement in the prior criminal proceeding.

A district court's ruling on "relevance and admissibility will not be disturbed unless there is an abuse of discretion." *United States v. Beltran,* 761 F.2d 1, 11 (1st Cir.1985). Rule 404(b) provides that evidence of other crimes, wrongs or acts may be introduced into evidence to show proof of motive or bias. *See Wierstak v. Heffernan,* 789 F.2d 968, 972–73 (1st Cir.1986). In order for evidence to be admissible under Rule 404(b), a determination must be made of whether the prejudicial effect of this evidence outweighs its probative value. Fed.R.Evid. 403; *see also Wierstak,* 789 F.2d at 972–73; *United States v. Zeuli,* 725 F.2d 813, 817 (1st Cir.1984); *United States v. Fosher,* 568 F.2d 207, 212 (1st Cir.1978). Furthermore, the test of admissibility is

---

4. In order to have a viable § 1983 claim against a municipality, a state actor must first commit an underlying constitutional violation. *See Monell v. New York Dept. of Social Services,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56

L.Ed.2d 611 (1978) (violation of constitutional rights by municipal employees is a prerequisite to finding municipality liable under § 1983). Therefore, the district court judge correctly directed verdicts in favor of the City of Taunton.

committed primarily to the district court which has broad discretion in applying Rule 403. *See United States v. Eatherton,* 519 F.2d 603, 611 (1st Cir.1975).

In this case, the charges against Ms. Pittsley for gun possession and the other motor vehicle violations were probative in demonstrating motive and bias given that Officer Warish arrested Ms. Pittsley and testified against her at trial which led to her conviction on the motor vehicle charges. Moreover, the arrest of Ms. Pittsley on these charges occurred only two weeks before the first incident complained of in this action took place. Therefore, we find the district court properly admitted the evidence and did not abuse its discretion.

For the reasons stated above, the district court's rulings and the jury's verdict are hereby *affirmed.*