**Ty GEAS, Plaintiff,**

v.

**Larry DUBOIS, et al., Defendants.**

**Civ. A. No. 91–12938–RCL.**

United States District Court,
D. Massachusetts.

Oct. 31, 1994.

Ty Geas, pro se.

Charles M. Wyzanski, Mass Dept. of Corrections, Boston, MA, for defendants.

LINDSAY, District Judge.

September 9, 1994

BOWLER, United States Magistrate Judge.

On February 3, 1992, plaintiff Ty Geas ("plaintiff") filed a Motion for Temporary Restraining Order and/or Preliminary Injunction. (Docket Entry # 5). On May 5, 1992, plaintiff filed a Motion for Partial Summary Judgment. (Docket Entry # 19). On June 30, 1994, plaintiff filed a Motion for Appointment of Law Firm/Counsel (Docket Entry # 33) and a Motion to Take Leave to File Late Until Said Files Are Produced (Docket Entry # 34).

On June 30, 1994, defendants[1] filed an opposition to plaintiff's Motion for Partial Summary Judgment. (Docket Entry # 35).[2]

## BACKGROUND

Plaintiff, an inmate in the Massachusetts correctional system, filed this *pro se* complaint on November 5, 1991, asserting claims under 42 U.S.C. § 1983 against defendants, all officials of the Massachusetts Department of Corrections ("the DOC"). (Docket Entry # 4). Plaintiff alleges that defendants violated his constitutional and statutory civil rights and inflicted emotional distress upon him by improperly assigning him to segregated housing in June 1991, by using chemical agents against him on October 21, 1991, and by conducting an unconsented to body cavity search of him on October 21, 1991. (Docket Entry # 4).[3]

On May 5, 1992, plaintiff filed a Motion for Partial Summary Judgment. (Docket Entry #·19). In his motion, plaintiff argues that on October 21, 1991, defendants violated his rights under the Fourth and Eighth Amendments to the Constitution by "spraying him with a chemical agent when he was helpless" and forcibly subjecting him to a finger search of his anal cavity. (Docket Entry # 19).

In their opposition (Docket Entry # 35), defendants admit that plaintiff was sprayed with a chemical agent, but argue that such action was constitutionally permissible. Defendants deny that plaintiff was subjected to a forced finger search of his anus, or any other form of cavity search. Defendants argue that a constitutionally permissible strip search was ordered in response to suspicious behavior by plaintiff which implicated prison security concerns. (Docket Entry # 35).

For purposes of the motion for partial summary judgment, the parties introduce the following factual information.

Plaintiff avers that on October 21, 1991, he complied with an order to remove his clothing for a strip search, but refused to comply with further orders when told that "a cavity search will be conducted." Plaintiff further attests that then he was "sprayed" with a chemical agent and "restrain[ed]" by correction officers. Plaintiff claims he was then "placed on a mattress as defendat [sic] [William Grossi] enter [sic] my anus with his finger." (Docket Entry # 19, Affidavit of Ty Geas).

Defendants aver that on October 21, 1991, a correction officer observed plaintiff "acting suspiciously" and apparently "tampering with the fence between cages # 8 and # 9" in the exercise yard. (Docket Entry # 35, Incident Report). As noted in the Incident Report, "upon entering the unit from the yard," plaintiff was escorted to a shower room and

1. Defendants are: Larry DuBois, Commissioner of Correction; Dennis Humphrey, Associate Commissioner of Operations; Ronald Duval, Superintendent of MCI–Cedar Junction; John Marshall, Director of Operations, MCI–Cedar Junction; Paul Rakiey, former Superintendent of MCI–Cedar Junction; Eugene Marsolais, Director of Security, MCI–Cedar Junction; Richard Beauregard, a correction officer; Anthony Sarantos, a sergeant in the Department Segregation Unit ("DSU"); Duane MacEachern, a captain in the DSU; Warren Butters, a lieutenant in the DSU; James Furtado, a sergeant in the DSU; Brian Ford, a correction officer; Fagota Tupe, a correction officer; Francis McGrail, a correction officer; Robert Mercer, a correction officer; and William Grossi, a correction officer. All defendants are sued in their individual and official capacities. (Docket Entry ## 4, 25).

2. Plaintiff filed an original complaint (Docket Entry # 4) and on April 1, 1992, plaintiff filed a Motion for Leave to File an Amended Complaint (Docket Entry # 13), which was allowed on November 22, 1993 (Docket Entry # 25). Plaintiff sought amendment solely to replace the pseudonyms "John Does I–IV" in the original complaint with the names of four Massachusetts Department of Correction ("DOC") officers whose identities had been learned through discovery. (Docket Entry # 13).

3. As alleged in the complaint, on October 21, 1991, when plaintiff was "coming in from the yard" after his exercise period, a DOC officer ordered him to enter the shower room and to remove his clothing for a "strip search." Plaintiff complied with the request to remove his clothing, but refused to comply with further orders because he overheard that an anal cavity search was intended. Shortly thereafter, DOC officers sprayed a chemical agent into the shower room at least twice, then entered the shower room and "slammed" and "pummeled" plaintiff. The officers then forcibly removed plaintiff from the shower room and conducted a "body cavity strip search" of plaintiff, including a finger probe of his anal cavity, without plaintiff's consent. (Docket Entry # 4).

ordered to submit to a strip search. *Id.*[4] Plaintiff refused to submit to the search despite: repeated orders to do so by correction officers; attempts to convince him to comply by a member of the prison's psychological services department; subsequent demands by correction officers that he "step up to the bars to be placed in restraints;" and, finally, warnings that a chemical agent as well as force might be used against him. (Docket Entry ## 4, Ex. G & H; Docket Entry # 35, Use of Force Reports).[5] After approximately one hour, MCI Cedar–Junction Superintendent, defendant Ronald Duval, ordered plaintiff moved from the shower room and authorized the use of a chemical agent, if necessary, to subdue plaintiff. (Docket Entry ## 4, Ex. G & H; Docket Entry # 35, Use of Force Reports, Memorandum of Ronald Duval). According to the report of defendant David Butters, only a reasonable amount of a chemical agent was dispersed into the shower area and plaintiff was subdued by a "move team" using only the necessary amount of force. (Docket Entry # 35, Use of Force Report).[6]

The affidavit of Grossi controverts plaintiff's allegations of an anal cavity search. Grossi, whom plaintiff alleges conducted the alleged anal cavity search, states by affidavit that, while "strictly adher[ing] to the Department's Search Policy (103 CMR 506), he spread [plaintiff's] buttocks and visually inspected the anal area." (Docket Entry # 35).

4. Apparently, the correction officers suspected that plaintiff was secreting contraband. William Grossi ("Grossi"), the correction officer whom plaintiff alleges conducted the anal cavity search, states by affidavit that he "inspected the anal area for contraband." (Docket Entry # 35).

5. A disciplinary report attached to plaintiff's complaint speaks to the security concerns the DOC officers may have had when facing plaintiff. The report, signed by two correction officers, including the victim of the alleged attack, states that disciplinary action was taken against plaintiff following an incident on May 29, 1991, in which plaintiff hit a correction officer in the face, knocking him to the ground, jumped on him, punched him in the head and bit him. (Docket Entry # 4, Ex. A). Further, plaintiff acknowledges by affidavit that, at the time of the October

## DISCUSSION

While it is well settled that an amended complaint supersedes the original, the amended complaint may incorporate the original complaint by specifically referring to the earlier pleading. *See Miesowicz v. Essex Group, Inc.*, 1994 WL 260645 at *2 (D.N.H. Apr. 12, 1994) (finding that the plaintiff's amended complaint, which added an additional claim for relief, "reallege[d] and incorporate[d] by reference" paragraphs from the original complaint); *Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir.1967) (amended complaint supersedes original); 6 Charles Wright, Alan Miller & Mary Kane, *Federal Practice and Procedure*, § 1446 (1990). Plaintiff's amended complaint specifically refers to the allegations in the original complaint several times.[7] Therefore, the amended complaint incorporates by reference the original complaint.

## I. *PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DOCKET ENTRY # 19)*

Summary judgment is permissible when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). This court is mindful that plaintiff is proceeding *pro se* and that his pleadings are entitled to liberal construction. *Bonilla v. Rodriguez*, 635 F.Supp. 148, 151 (D.P.R.1986) (citing *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)).

21, 1991 incident, he was being housed in a heightened security, department segregation unit. (Docket Entry # 4, Ex. B).

6. In subsequent disciplinary reports, plaintiff was cited for "refusal to obey a proper order," violating DOC rules, and disruptive conduct. (Docket Entry # 4, Ex. G & H).

7. In his motion, plaintiff requests "leave to file an amended complaint adding the following parties" to the original complaint. (Docket Entry # 13). In the amended complaint, plaintiff refers repeatedly to the allegations in the original complaint, and states that the amendments are to be incorporated into the specific paragraphs in the original complaint to which he refers. (No Docket Entry No. Assigned, Amended Complaint).

Plaintiff nevertheless bears the initial burden of demonstrating his legal entitlement to summary judgment. *Lopez v. Corporacion Azucarera de Puerto Rico,* 938 F.2d 1510 (1st Cir.1991) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). He must initially show that no genuine dispute exists as to any material fact. Inferences are drawn in favor of defendants, the nonmoving parties. *Space Master Int'l, Inc. v. City of Worcester,* 940 F.2d 16 (1st Cir.1991); *Price v. General Motors Corp.,* 931 F.2d 162 (1st Cir.1991) (record viewed in light most favorable to nonmoving party).

In deciding whether a factual dispute is genuine, this court must determine whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *accord Aponte–Santiago v. Lopez–Rivera,* 957 F.2d 40, 41 (1st Cir. 1992) (citing *Anderson* ). "A fact is "material" if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs.,* 882 F.2d 993 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); *see generally Aponte–Santiago v. Lopez–Rivera,* 957 F.2d at 40–41 (discussing summary judgment standard).

To state a valid claim under section 1983 against a state prison official, a plaintiff must allege the "violation of a right secured by the Constitution and laws of the United States, and ... that the ... deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48,

108 S.Ct. 2250, 2254–55, 101 L.Ed.2d 40 (1988); *accord Pittsley v. Warish,* 927 F.2d 3, 6 (1st Cir.), *cert. den.,* — U.S. —, 112 S.Ct. 226, 116 L.Ed.2d 183 (1991). Accordingly, plaintiff must demonstrate that defendants' actions were constitutionally impermissible.

While prison inmates retain a measure of their constitutional rights, correction officers may strip search inmates in numerous circumstances. *Bell v. Wolfish,* 441 U.S. 520, 558, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979); *see also United States v. Chamorro,* 687 F.2d 1, 4 (1st Cir.), *cert. den.,* 459 U.S. 1043, 103 S.Ct. 462, 74 L.Ed.2d 613 (1982).[8] Courts should accord broad deference to prison administrators when reviewing the reasonableness of policies designed to preserve internal order, security, and discipline. *Wolfish,* 441 U.S. at 547, 99 S.Ct. at 1878.[9]

Regarding the strip search of plaintiff, including the visual search of plaintiff's anal area, plaintiff has not shown that judgment is appropriate as a matter of law. Here, defendants' affidavit controverts plaintiff's claim that an anal cavity search was conducted. Moreover, the First Circuit Court of Appeals upheld a policy of strip searching inmates housed in segregated security units similar to that in the instant case when the inmates traveled within the prison. *Arruda v. Fair,* 710 F.2d 886 (1st Cir.), *cert. den.,* 464 U.S. 999, 104 S.Ct. 502, 78 L.Ed.2d 693 (1983). Specifically, *Arruda* validated strip searches of inmates traveling from the segregation unit to the law library, to the infirmary, or to visitors' rooms, even though

---

**8.** *Wolfish* held that whether a particular strip search is reasonable requires a balancing of interests.

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Bell v. Wolfish,* 441 U.S. at 559–60, 99 S.Ct. at 1884–85; *see United States v. Caldwell,* 750 F.2d 341 (5th Cir.1984), *cert. den.,* 471 U.S. 1007, 105

S.Ct. 1873, 85 L.Ed.2d 166 (1985) (digital rectal search of inmate, conducted in accordance with prison regulations, not unconstitutional); *United States v. Lilly,* 576 F.2d 1240, 1246 (5th Cir. 1978) (body cavity searches of inmates are not *per se* unreasonable); *see generally Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986) (correction facilities may use force in a number of circumstances).

**9.** Courts must "be most hesitant to overturn prison administrators' good faith judgments." *Arruda v. Fair,* 710 F.2d at 887 (strip searches before and after intraprison transfers upheld despite fact that inmates were shackled and accompanied by guards).

the inmates were shackled and accompanied by two guards whenever they moved from their cells. *Arruda v. Fair*, 710 F.2d 886.[10]

Under defendants' version of the facts, plaintiff, housed in a high security unit and having a history of violence, was tampering with a fence and acting suspiciously in the exercise yard. Because the anal area is a possible location for concealing contraband, this court finds that a genuine issue of material fact remains as to whether a forced visual search of this area was justified under the facts as they may be revealed at trial. Therefore, plaintiff's motion for summary judgment as to the alleged anal cavity search fails.

■■■ While correction officers may not use chemical agents in greater quantities than necessary or for the sole purpose of punishment or infliction of pain, "the use of non-dangerous quantities of [a chemical agent] in order to prevent a perceived future danger does not" generally overstep constitutional parameters. *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir.1984), *cert. den.*, 470 U.S. 1085, 105 S.Ct. 1846, 85 L.Ed.2d 144 (1985); *see also Spain v. Procunier*, 600 F.2d 189, 196 (9th Cir.1979).

Here, however, defendants controvert plaintiff's allegations as to the factual circumstances leading up to the use of a chemical agent against plaintiff. Plaintiff allegedly refused to comply with correction officers' re-

peated orders to cooperate over a one hour period, refused to exit the shower room, ignored pleas from a prison psychologist, refused to be placed in restraints, and ignored the warning of the use of force and of a chemical agent against him.[11] Moreover, the officers had reason to believe plaintiff was a security risk because he had assaulted and battered a correction officer five months earlier. Accordingly, regarding the use of a chemical agent and the subsequent use of force against plaintiff to remove him from the shower room, plaintiff fails to show the absence of a genuine issue as to any material fact such that judgment as a matter of law is appropriate.

Denial of plaintiff's Motion for Partial Summary Judgment (Docket Entry # 19) is therefore appropriate.

## II. *MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION (DOCKET ENTRY # 5)*

■■■ On February 3, 1992, plaintiff filed a Motion for Temporary Restraining Order and/or Preliminary Injunction "directing the defendants to stop the used [sic] of body cavity strip search [sic] of the anus without a court order, and to enjoin the use of chemical agents against prisoners locked in the shower room...." (Docket Entry # 5).[12]

---

**10.** Two other United States Courts of Appeals have upheld strip searches under circumstances similar to those in *Arruda*. In *Campbell v. Miller*, 787 F.2d 217, 228 (7th Cir.), *cert. den.*, 479 U.S. 1019, 107 S.Ct. 673, 93 L.Ed.2d 724 (1986), the court permitted visual body cavity searches of high security inmates being transported to a prison library, citing the "legitimate security and disciplinary concerns" of the security unit and courts' deference to the judgment of prison authorities regarding such concerns. In *Goff v. Nix*, 803 F.2d 358, 370–71 (8th Cir.1986), *cert. den.*, 484 U.S. 835, 108 S.Ct. 115, 98 L.Ed.2d 73 (1987), the court upheld visual body cavity searches of segregation unit inmates before and after going to the exercise area, inasmuch as there existed a possibility of contraband being obtained in the exercise area.

**11.** Section 505.07(1)(f) of chapter 103 of the Code of Massachusetts Regulations permits the use of reasonable force against an inmate when necessary to "move an inmate who has refused a

proper order by an employee." 103 CMR § 505.07. Further, while plaintiff proffers for this court's reference 103 CMR § 505.09, "Requirements Governing the Use of Chemical Agents," and 103 CMR § 505.13, "Reporting Requirements for the Use of Force," he fails to allege, let alone establish, a failure by defendants to meet the criteria set forth therein. (Docket Entry # 4, Ex. I).

**12.** This court does not have the authority to consider plaintiff's request for a temporary restraining order. Pursuant to Rule 3(a)(A)(3) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, however, a magistrate judge has the authority to conduct an evidentiary hearing and submit proposed findings of fact and recommendations to the district judge with respect to motions for injunctive relief. This authority of a magistrate judge does not, however, extend to a motion for a temporary restraining order. This court therefore treats the motion as seeking a

A preliminary injunction will issue if the court finds that the movant has met four criteria: (1) that the plaintiff will suffer irreparable injury if the injunction is not allowed; (2) that such injury outweighs any harm which granting injunctive relief would inflict on the defendants; (3) that the plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by granting the injunction. *Vargas–Figueroa v. Saldana,* 826 F.2d 160, 162 (1st Cir.1987).

Plaintiff's motion for a preliminary injunction is unavailing. As discussed above, the crucial facts necessary to establish plaintiff's claims are in dispute. Accordingly, plaintiff fails to show a reasonable likelihood of success on the merits. Denial of plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction (Docket Entry # 5) is therefore proper.

### III. *PLAINTIFF'S MOTION FOR APPOINTMENT OF LAW FIRM/COUNSEL (DOCKET ENTRY # 33)*

Plaintiff filed a Motion for Appointment of Law Firm/Counsel (Docket Entry # 33) on June 30, 1994. This issue was already ruled on by a magistrate judge on August 3, 1993. (Docket Entry # 24). In that Order, the magistrate judge denied plaintiff's earlier Motion for Appointment of Counsel (No Docket Entry No. Assigned) and Motion to Re-new the Appointment of Counsel Motion Upon Showing Good Cause (Docket Entry # 18).[13]

This court finds that the circumstances of this case, including the merits of plaintiff's case, the complexity of the legal issues presented, and plaintiff's ability to represent

himself, have not changed since August 3, 1993. Accordingly, Plaintiff's Motion for Appointment of Law Firm/Counsel (Docket Entry # 33) is **DENIED.**

### IV. *PLAINTIFF'S MOTION TO TAKE LEAVE TO FILE LATE UNTIL SAID FILES ARE PRODUCED (DOCKET ENTRY # 34)*

On June 30, 1994, plaintiff filed a Motion to Take Leave to File Late Until Said Files Are Produced. (Docket Entry # 34). The motion (Docket Entry # 34) is **DENIED** as moot because it relates to plaintiff's Motion to Compel Defendants to Produce Requested Written Policies (Docket Entry # 14) ruled on by Order dated November 30, 1993 (Docket Entry # 26).

### CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS** [14] that plaintiff's Motion for Partial Summary Judgment (Docket Entry # 19) be **DENIED** and that plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction (Docket Entry # 5) be **DENIED** as to the preliminary injunction and **RESERVED** [15] for the district judge as to the matter of a temporary restraining order.

Plaintiff's Motion to Take Leave to File Late Until Said Files Are Produced (Docket Entry # 34) and plaintiff's Motion for Appointment of Law Firm/Counsel (Docket Entry # 33) are **DENIED.**

---

preliminary injunction. To the extent plaintiff seeks a temporary restraining order, plaintiff's request is reserved for the district judge.

**13.** The court held that "this action does not present complex legal issues" and that the merits of the case and the degree of plaintiff's ability to represent himself do not constitute exceptional circumstances sufficient to warrant the appointment of counsel. (Docket Entry # 24).

**14.** Any objection to this Report and Recommendation must be filed with the •Clerk of Court

within ten days of receipt of the Report and Recommendation and must identify that portion of the *Report and Recommendation to* which objection is made and the basis for such objection. Any party may respond to another party's objections within ten days after service of the objections. Failure to file objections within the specified time waives the right to appeal the district court's order. *United States v. Vega,* 678 F.2d 376, 378–9 (1st Cir.1982); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986).

**15.** See footnote number 12.