**Vicki DIVERGILIO, individually and as next friend of Dana Marie Divergilio, et al., Plaintiffs,**

v.

**Jonathan SKIBA, et al., Defendants.**

**Civ. A. No. 93–CV–40049–FL.**

United States District Court,
E.D. Michigan,
Southern Division.

March 11, 1996.

Malcolm A. Harris, Metamora, MI, Lisa H. Litton, Michael J. Nolan, Kohl, Harris, Metamora, MI, for Vicki Divergilio, Dana Marie Divergilio, Rebecca Greer, Nicole Greer, Janet Germonprez, Jamie Germonprez, Ingrid H. Johnson, Robin Ryniak, David Strength, Hazel A. Henry, Tiffany Thibodeaux.

Stephanie A. Neal, Neal, Neal & Stewart, Flint, MI, Arthur R. Przybylowicz, Bernard Marinelli, White, Przybylowicz, Schneider & Baird, P.C., Okemos, MI, for Jonathan Skiba.

Edward D. Plato, Roger F. Wardle, Kohl, Secrest, Wardle, Lynch, Clark & Hampton, Farmington Hills, MI, Gary J. Collins, William J. Blaha, Collins & Blaha, P.C., Southfield, MI, for Almont Community Schools.

Edward D. Plato, Kohl, Secrest, Wardle, Lynch, Clark & Hampton, Gary J. Collins, William J. Blaha, Collins & Blaha, P.C., Southfield, MI, for John Carlson, Frank Bacholzky, Paul S. Bowman, James R. Wade, Marjorie A. Immekus, Donald W. Eschenburg, Curtiss L. Gnepper, Ronald C. Nieman, Thomas L. Edwards, Ms. Eschenburg.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, Senior District Judge.

Before the Court is defendant Jonathan Skiba's motion to dismiss count I (D.E. # 86). The motion has been fully briefed, and oral argument has been heard. For the following reasons, the motion is GRANTED and count I is HEREBY DISMISSED.

### I. Background

This civil rights action arises out of defendant Skiba's alleged conduct toward several children who were his students during the 1989–90 school year at the Almont Elementary School in Almont, Michigan. At the time, defendant Skiba was a fifth grade gym teacher at Almont. According to the complaint, defendant Skiba allegedly exposed his genitalia and committed other heinous acts toward several of his students on multiple occasions. Through this lawsuit, the children's parents have brought claims under 42 U.S.C. § 1983 and under state tort law, both individually and on behalf of the various students. Defendant Skiba has filed the instant motion seeking to dismiss the constitutional claims brought by the plaintiff parents in count I of the complaint.

In the original motion, defendant Skiba challenged plaintiff parents' standing to sue

under § 1983 for deprivation of their children's constitutional rights. Plaintiff parents clarified in their response brief, and at oral argument, that they have brought suit not only on behalf of their children but also individually for deprivation of their own constitutional interest in maintenance of the parent-child relationship. Plaintiff parents claim that through his conduct defendant Skiba has deprived them of their liberty interests to:

(a) Preserve and maintain the physical safety and mental well-being of their children;

(b) Preserve and maintain the integrity of their family; and

(c) To otherwise associate freely without the constraints of emotional distress created as a result of the Defendants' violations, acting under color of state law, of the Plaintiffs' constitutional rights.

In light of this clarification, defendant Skiba acknowledges plaintiff parents' attempt to state a claim in their own right; nevertheless, defendant Skiba still seeks dismissal of plaintiff parents' claims in count I, arguing that even if all the facts alleged by plaintiff parents were proved, the allegations still would fail to state a claim upon which relief can be granted.

## II. *Constitutional Protection of Parent–Child Relationship*

### A. *Source of Protected Right*

The Supreme Court most recently addressed the constitutional right to enter into and maintain intimate relationships in *Roberts v. United States Jaycees,* 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984), and *Board of Directors of Rotary Int'l v. Rotary Club of Duarte,* 481 U.S. 537, 107 S.Ct. 1940, 95 L.Ed.2d 474 (1987). In both cases, the Court upheld state laws which compelled the Jaycees (in *Roberts* ) and the California Rotary Clubs (in *Rotary Club* ) to admit female members. In rejecting First Amendment challenges to the state laws, the Court discussed the constitutional right to freedom of association. The Court recognized that in two distinct senses the Constitution affords protection to one's freedom of association:

First, the Court has held that the Constitution protects against unjustified government interference with an individual's choice to enter into and maintain certain intimate or private relationships. Second, the Court has upheld the freedom of individuals to associate for the purpose of engaging in protected speech or religious activities....

*Rotary Club,* 481 U.S. at 544, 107 S.Ct. at 1945. The Court discussed further the substance of the protection afforded intimate or private relationships:

The Court has recognized that the freedom to enter into and carry on certain intimate or private relationships is a fundamental element of liberty protected by the Bill of Rights. Such relationships may take various forms, including the most intimate.... The intimate relationships to which we have accorded constitutional protection include marriage ... the begetting and bearing of children ... child rearing and education ... and cohabitation with relatives.... We have emphasized that the First Amendment protects those relationships, including family relationships, that presuppose "deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life."

*Id.* at 545, 107 S.Ct. at 1946 (quoting *Roberts,* 468 U.S. at 619–20, 104 S.Ct. at 3250).

▮ Clearly, through the guarantees of both First Amendment freedom of association and Fourteenth Amendment substantive due process, the Constitution protects against unjustified governmental interference in various aspects of the parent-child relationship. This recognition, however, resolves only part of the issue before the Court. While plaintiff parents have standing to bring the claim asserted in their complaint, the question still remains, accepting as true the allegations made in the complaint and under any provable set of facts, whether plaintiff parents have stated a violation of that constitutionally protected right.

## B. *Parameters of Constitutional Protection*

The parties discuss several cases which are pertinent to the present issue. Defendant Skiba is correct that the cases upon which plaintiff relies are distinct from the facts of this case in one notable respect: they all involve a situation in which the protected familial relationship has been completely severed by some state action. In every case, the plaintiffs have suffered either the death or physical removal of a family member by a governmental actor. In the present case, plaintiff parents' children have not been taken away from them physically; rather plaintiff parents allege that through defendant Skiba's actions the quality of the parent-child relationship has been diminished by the emotional and mental distress resulting from defendant Skiba's actions toward their children. Defendant Skiba would have the Court limit the cause of action to instances in which the parent has been denied access to the child. Nevertheless, while the factual distinction between the present case and those cited by the parties is a significant one, it is not dispositive of plaintiff parents' claims; and the Court finds defendant Skiba's definition of the right too restrictive. As articulated by the Supreme Court, "the Constitution protects against unjustified government interference with an individual's choice to enter into *and maintain* certain intimate or private relationships." *Rotary Club,* 481 U.S. at 544, 107 S.Ct. at 1945 (emphasis added). Nothing in this pronouncement indicates that complete severance of the relationship is the minimum level of intrusion necessary to trigger protection of this "fundamental element of liberty." *Id.* at 545, 107 S.Ct. at 1945.

Thus, the claim should not be disposed of on the basis of the extent of injury. This does not, however, obviate the need for some limitation of the breadth of the cause of action. While the Sixth Circuit has not ruled upon the present issue, based upon the views expressed by the court, it is possible to discern a probable treatment of this type of claim.

In *Jaco v. Bloechle,* 739 F.2d 239 (6th Cir.1984), the Sixth Circuit held that the cause of action under § 1983 "is a personal action cognizable only by the party whose civil rights had been violated; while, on the other hand, the wrongful death action is a cause of action that inures to the benefit of decedent's estate, as a result of, not the personal injury suffered by the *decedent,* but rather, injuries to his estate caused by his wrongful death." 739 F.2d at 242. In a subsequent case, the court declined to address the merits of whether a plaintiff had standing to sue under § 1983 for the wrongful death of a family member by asserting deprivation of the parent-child relationship. *Purnell v. City of Akron,* 925 F.2d 941, 948 n. 6 (6th Cir.1991). Nevertheless, while recognizing the validity of such a claim in other circuits, the court opined in dicta that were the question before it, it would not likely do so, given its previous ruling in *Jaco* "that § 1983 provides a cause of action which is *personal* to the injured party." *Id.* Instead of focusing on the extent of the effect upon the protected relationship—as does defendant Skiba—the Sixth Circuit implied that no claim would lie because the injury to the relationship was merely incidental to the offending conduct.

Given the court of appeals' statement in *Purnell,* it is doubtful that this circuit would find cognizable plaintiff parents' claim for interference with their parent-child relationship where the alleged offending conduct was directed toward the children themselves and not the relationship. Particularly persuasive to this conclusion is the First Circuit's analysis in *Pittsley v. Warish,* 927 F.2d 3 (1st Cir.1991), which is consistent with the position intimated by the Sixth Circuit in *Purnell.*

In *Pittsley,* the First Circuit reviewed the same line of cases that have been proffered by the parties herein. The court noted that:

> Most courts which have recognized a protected right to familial association, and allowed parents or their children to recover under § 1983 for alleged unconstitutional conduct primarily directed toward another family member have done so only where the plaintiffs have alleged a permanent, physical loss of association of an immediate family member as a result of unlawful state action.

927 F.2d at 8, *citing Bell v. Milwaukee,* 746 F.2d 1205, 1244–45 (7th Cir.1984) (police officers shot and killed son); *Kelson v. Springfield,* 767 F.2d 651, 655 (9th Cir.1985) (public school failed to prevent son from committing suicide); *Trujillo v. Board of County Comm'rs,* 768 F.2d 1186, 1188–89 (10th Cir. 1985) (wrongful death of son). That observation aside, the First Circuit held that "to establish a violation of a right to familial associational privacy, the state action must be directly aimed at the parent-child relationship." *Id.*

> State action that affects the parental relationship only incidentally ... even though the deprivation may be permanent, as in the case of unlawful killing by the police, is not sufficient to establish a violation of a identified liberty interest. ... [O]nly the person toward whom the state action was directed, and not those incidentally affected may maintain a § 1983 claim.

*Id.* (citation omitted). This approach also is consistent with the general restriction that only deliberate government decisions depriving a person of life, liberty, or property are actionable under substantive due process. *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986).

### C. *Analysis*

In the present case, plaintiff parents argue that by exposing himself to their children defendant Skiba caused the children and the parents mental and emotional distress that has severely interfered with the maintenance of their parental relationship with their children. Thus, plaintiff parents couch their claim in the form of an injury personal to themselves, a deprivation of their liberty interest in creation and maintenance of a parent-child relationship free from governmental intrusion. Nonetheless, the Court finds that this is, in reality, not a claim possessed by plaintiff parents but an injury incidental to defendant Skiba's alleged violation of plaintiff children's constitutional rights.

Plaintiff parents allege neither that defendant Skiba intentionally nor directly acted to deprive them of or to diminish their familial relationship with their children. There is no severance of the relationship, as in all the cases cited by the parties, nor are there allegations of an attempt to do so; plaintiff parents have not suffered a permanent, physical loss of association. If the Sixth Circuit would be unwilling to recognize a cause of action for deprivation of the parent-child relationship in a case of wrongful death, where the relationship has been irrevocably severed incidental to the family member's death, the Court cannot conceive recognition of the cause of action for the incidental diminution in quality of the protected relationship alleged in this case.

Not every tort injury at common law implicates a constitutional remedy. To recover under § 1983 for deprivation of a protected relationship, a plaintiff must prove that the governmental action was directed toward a protected aspect of that relationship and that any injury was not merely incidental to the action taken. *Pittsley,* 927 F.2d at 8. Absent a showing of directed state action, there is no constitutional claim and any recovery is limited to that available under state law.

### III. *Conclusion*

The Court holds that plaintiff parents lack standing to bring a § 1983 claim for deprivation of their children's constitutional rights. While plaintiff parents do have standing to sue for deprivation of their own liberty interest in creation and maintenance of the parent-child relationship, the allegations made in the complaint and the facts asserted in opposition to defendant Skiba's motion fail to support a claim for such deprivation. Therefore, the Court finds that plaintiff parents have failed to state a claim upon which relief may be granted.

For the foregoing reasons, defendant Skiba's motion to dismiss plaintiff parents' constitutional claims asserted in count I (D.E. # 86) is GRANTED and the claims asserted under count I are HEREBY DISMISSED.

SO ORDERED.