SMITH, Justice.
Andrew Miller and his siblings, Joanne Brown, Curtis Miller, Daryl Miller, Earl *770 Miller, Larry Miller, Janice Williams, and Michael Youngblood (hereinafter Miller and his siblings are sometimes referred to collectively as “the plaintiffs”), appeal from an order of the Montgomery Circuit Court denying their motions for a temporary restraining order and a preliminary injunction. We affirm the order in part and dismiss the appeal in part.

Facts and Procedural History

On September 4, 1986, Andrew Miller was arrested in connection with a burglary and a rape that occurred on August 4, 1986; Miller was 15 years old at the time of the offenses. That same day Miller’s case was brought before the juvenile division of the Montgomery Circuit Court (“the juvenile court”) for prosecution. The Montgomery County District Attorney moved the juvenile court to transfer Miller’s case to the criminal division of the Montgomery Circuit Court (“the trial court”) for prosecution; the juvenile court granted that motion in an order dated September 4, 1986. Subsequently, the district attorney moved the trial court to transfer Miller’s case back to the juvenile court; the trial court granted that motion. However, on January 28, 1987, the juvenile court entered an order stating that, in moving to transfer Miller’s case back to the juvenile court, the district attorney had relied on an inapplicable statute; that “no party to the September 4, 1986, proceedings did or has requested [the juvenile court] to reconsider its rulings”; and that, because the juvenile court had granted the prior motion to transfer Miller’s case to the trial court, the juvenile court no longer had jurisdiction over the charges against Miller.[1] Miller’s case remained in the trial court.
On March 17, 1987, Miller was convicted in the trial court of first-degree robbery, first-degree burglary, first-degree sodomy, and first-degree rape. On April 17, 1987, the trial court sentenced Miller to concurrent terms of 20 years in prison on each conviction. Miller served his entire sentence; he was released from prison in September 2006.
On July 18, 2008, the Montgomery County Probate Court entered an order involuntarily committing Miller to the custody of the Alabama Department of Mental Health and Mental Retardation (“DMHMR”), finding, among other things, that Miller “is mentally ill and poses a real and present threat of substantial harm to himself.” On the same day, Miller was admitted to the Crisis Residential Facility, a mental-health-treatment facility located in Montgomery. During his commitment period at the Crisis Residential Facility, Miller was diagnosed with “schizoaffective disorder, bipolar type” and with hypertension, diabetes, and edema, and he was prescribed numerous medications for both his mental and physical illnesses. Miller’s mental condition was eventually stabilized, and on August 12, 2008, he was discharged from the Crisis Residential Facility to “Dixon Restore Home,” a homeless shelter located in Montgomery. However, Miller’s mental health deteriorated while he resided at the homeless shelter, and on December 3, 2008, the probate court entered a second order involuntarily committing Miller to DMHMR’s custody. Miller returned to the homeless shelter when he was released from DMHMR’s custody, and his mental health again deteriorated; thus, the probate court entered a third order on April 29, 2009, involuntarily committing Miller to DMHMR’s custody.
On September 17, 2008, the plaintiffs filed a complaint in the trial court pursuant to 42 U.S.C. § 1988, naming as defendants Governor Bob Riley; Attorney General *771 Troy King; Colonel J. Christopher Murphy, director of the Alabama Department of Public Safety; Montgomery County Sheriff D.T. Marshall; City of Montgomery Police Chief A.D. Baylor; Montgomery County District Attorney Ellen Brooks; Montgomery County; Prison Health Services, Inc.; Correctional Medical Services, Inc.;[2] and Richard F. Allen, commissioner of the Alabama Department of Corrections (hereinafter referred to collectively as “the defendants”). The complaint alleged that Miller has been improperly classified as an “adult criminal sex offender” for purposes of the Alabama Community Notification Act, § 15-20-20 et seq., Ala.Code 1975 (“the CNA”); that the residency restrictions of the CNA, as set forth in § 15-20-26, Ala.Code 1975,[3] unconstitutionally infringe upon several of Miller’s constitutional rights; that the residency restrictions of the CNA unconstitutionally infringe upon the plaintiffs’ “fundamental right to familial association”; and that prison officials displayed “deliberate indifference” to Miller’s medical needs, in violation of the Eighth Amendment to the United States Constitution and Alabama law.
The plaintiffs also filed contemporaneous motions for a temporary restraining order (“TRO”) and a preliminary injunction, seeking to prevent the defendants from applying to Miller the residency restrictions of the CNA applicable to adult criminal sex offenders. After a hearing, the trial court entered an order denying the plaintiffs’ motions for a TRO and a preliminary injunction, concluding that requiring Miller to continue complying with the residency restrictions of the CNA applicable to adult criminal sex offenders “would not cause irreparable injury to any of the [plaintiffs.” The plaintiffs appealed. See Rule 4(a)(1)(A), Ala. R.App. P. (providing that a party may appeal from “any interlocutory order granting, continuing, modifying, refusing, or dissolving an injunction, or refusing to dissolve or to modify an injunction”). This Court heard oral argument on October 8, 2009.

Standard of Review

“We have often stated: ‘The decision to grant or to deny a preliminary injunction is within the trial court’s sound discretion. In reviewing an order granting [or denying] a preliminary injunction, the Court determines whether the trial court exceeded that discretion.’ SouthTrust Bank of Alabama, N.A. v. Webb-Stiles Co., 931 So.2d 706, 709 (Ala. 2005).
“A preliminary injunction should be issued only when the party seeking an injunction demonstrates:
‘““(1) that without the injunction the [party] would suffer irreparable injury; (2) that the [party] has no adequate remedy at law; (3) that the [party] has at least a reasonable chance of success on the ultimate merits of his case; and (4) that the hardship imposed on the [party op *772 posing the preliminary injunction] by the injunction would not unreasonably outweigh the benefit accruing to the [party seeking the injunction].” ’
“Ormco Corp. v. Johns, 869 So.2d 1109, 1113 (Ala.2003) (quoting Perley v. Tapscan, Inc., 646 So.2d 585, 587 (Ala.1994)).
“To the extent that the trial court’s [denial] of a preliminary injunction is grounded only in questions of law based on undisputed facts, our longstanding rule that we review [the refusal to issue] an injunction solely to determine whether the trial court exceeded its discretion should not apply. We find the rule applied by the United States Supreme Court in similar situations to be persuasive: ‘We review the [trial court’s] legal rulings de novo and its ultimate decision to issue [or not to issue] the preliminary injunction for abuse of discretion.’ Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418, 428, 126 S.Ct. 1211, 163 L.Ed.2d 1017 (2006).”
Holiday Isle, LLC v. Adkins, 12 So.3d 1173, 1175-76 (Ala.2008).

Discussion

Although the plaintiffs raise numerous issues on appeal, we find that the dispositive issue is whether the trial court erred in finding that requiring Miller to continue complying with the residency restrictions of the CNA applicable to adult criminal sex offenders would not cause any of the plaintiffs to suffer irreparable injury. However, before considering the substantive issue presented by the appeal, we must first address the issue whether Miller’s siblings have standing to maintain a claim in this action.
“ ‘Standing represents a jurisdictional requirement which remains open to review at all stages of the litigation.’ National Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 255, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994). ‘ “[L]ack of standing [is] a jurisdictional defect.” ’ State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1028 (Ala.1999) (quoting Tyler House Apartments, Ltd. v. United States, 38 Fed.Cl. 1, 7 (Fed.Cl.1997)). ‘[J]urisdictional matters are of such magnitude that we take notice of them at any time and do so even ex mero motu.’ Nunn v. Baker, 518 So.2d 711, 712 (Ala.1987).”
Ex parte Fort James Operating Co., 871 So.2d 51, 54 (Ala.2003).
“ When a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction.’ State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1028 (Ala.1999). Action taken by a trial court lacking subject-matter jurisdiction is void. 740 So.2d at 1029. Of course, ‘a void order or judgment will not support an appeal.’ Gallagher Bassett Servs., Inc. v. Phillips, 991 So.2d 697, 701 (Ala.2008).”
Riley v. Pate, 3 So.3d 835, 838 (Ala.2008).
The defendants argue on appeal that Miller’s siblings lack standing to maintain a claim under 42 U.S.C. § 1983.[4] Specifically, the defendants contend that, “[u]n-less [Miller’s siblings] can show that the Alabama legislature intended to direct the CNA directly at them, they have no standing under § 1983.” (Defendants’ brief, at *773 p. 12 n. 5.) In support of their argument, the defendants cite Trujillo v. Board of County Commissioners of Santa Fe County, 768 F.2d 1186, 1189-90 (10th Cir.1985), and Apodaca v. Rio Arriba County Sheriff’s Department, 905 F.2d 1445 (10th Cir.1990), for the proposition that “parents and siblings ha[ve] to show intent to interfere with a protected relationship in order to recover for deprivation of First Amendment right to freedom of association.” (Defendants’ brief, at p. 12 n. 5.)
The plaintiffs present no argument on appeal regarding whether Miller’s siblings have standing in this action. However, the plaintiffs argued in the trial court that Miller’s siblings have standing because, they said, Miller’s siblings “have constitutionally recognized rights to familial association and assert their own rights.” Specifically, the plaintiffs, citing numerous cases, argued in the trial court that the right to familial association “is protected by the right to intimate association in the First Amendment and the substantive component of the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Alabama law”; that the right to familial association “includes the right to live together as a family”; that the right to familial association “is so fundamental that it is recognized for several relatives, including siblings”; that Miller’s siblings’ “rights to familial association are particularly salient because they, like a parent, provide primary care for Mr. Miller”; and “that siblings may enforce their right to familial association through ‘the remedy established by [42 U.S.C. § ] 1983.’ ” (Quoting Trujillo, 768 F.2d at 1189.)[5]
Assuming, without deciding, that each of Miller’s siblings has a constitutionally protected right to reside with Miller, we nonetheless conclude that Miller’s siblings lack standing to maintain a claim in this action under § 1983. “[O]nly the person toward whom the state action was directed, and not those incidentally affected, may maintain a § 1983 claim [for a violation of the familial association right].” Manarite v. City of Springfield, 957 F.2d 953, 960 (1st Cir.1992) (quoting Pittsley v. Warish, 927 F.2d 3, 8 (1st Cir.1991) (emphasis omitted)). The plaintiffs present no evidence showing that the state action they allege violates their respective rights to familial association, namely, the enforcement against Miller of the residency restrictions of the CNA applicable to adult criminal sex offenders, is directed at their familial relationship.
Furthermore, as stated by the defendants, “[t]here is no evidence that the legislature ... intended [to direct the residency restrictions of the CNA toward the plaintiffs] and it is contrary to the legislative intent as stated in the statute.” (Defendants’ brief, at p. 12 n. 5.) The legislature has clearly stated its intent in imposing residency restrictions upon criminal sex offenders such as Miller, declaring, among other things, that “residency and employment restrictions for criminal sex offenders provide additional protections to vulnerable segments of the public such as schools and child care facilities.” § 15-20-20.1, Ala.Code 1975.
The plaintiffs have failed to show that the state action in requiring Miller to continue complying with the residency restrictions of the CNA applicable to adult criminal sex offenders is directed at their right to familial association; thus, any resulting deprivation of that right is merely incidental to the state action. Therefore, we hold *774 that Miller’s siblings lack standing to maintain a claim in this action under 42 U.S.C. § 1983. See Manarite, supra; Perez-Sanchez v. Public Bldg. Auth., 557 F.Supp.2d 227, 289 (D.P.R.2007) (“ ‘Family members do not have an independent claim under § 1983 unless the constitutionally defective conduct or omission was directed at the family relationship.’ ” (quoting Torres v. United States, 24 F.Supp.2d 181, 183 (D.P.R.1998))); Divergilio v. Skiba, 919 F.Supp. 265, 269 (E.D.Mich.1996) (“To recover under § 1983 for deprivation of a protected relationship, a plaintiff must prove that the governmental action was directed toward a protected aspect of that relationship and that any injury was not merely incidental to the action taken.... Absent a showing of directed state action, there is no constitutional claim.... ” (citing Pittsley, 927 F.2d at 8)); see also Daniels v. Williams, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (“Historically, this guarantee of due process [under the Fourteenth Amendment] has been applied to deliberate decisions of government officials to deprive a person of life, liberty, or property.” (citing numerous cases)). Accordingly, insofar as the appeal concerns Miller’s siblings, the appeal is dismissed. See Riley v. Pate, supra.
We next address the substantive issue: Whether the trial court erred in finding that Miller would not suffer irreparable injury if he continued complying with the residency restrictions of the CNA applicable to adult criminal sex offenders.
“ ‘ “Irreparable injury” is an injury that is not redressable in a court of law through an award of money damages.’ [Perley v. Tapscan, Inc.,] 646 So.2d [585,] 587 [(Ala.1994)] (citing Triple J Cattle, Inc. v. Chambers, 551 So.2d 280 (Ala.1989)). However, ‘courts will not use the extraordinary power of injunc-tive relief merely to allay an apprehension of a possible injury; the injury must be imminent and irreparable in a court at law.’ Martin v. City of Linden, 667 So.2d 732, 736 (Ala.1995); see also Borey v. National Union Fire Ins. Co. of Pittsburgh, 934 F.2d 30, 34 (2d Cir.1991) (stating that ‘a mere possibility of irreparable harm is insufficient to justify the drastic remedy of a preliminary injunction’).”
Ormco Corp. v. Johns, 869 So.2d 1109, 1113-14 (Ala.2003).
On appeal, Miller contends that he is severely mentally ill, that he is incapable of independent living, and that, for his health and his safety, he must reside either with one of his siblings or in a group home for the mentally ill. However, Miller argues, the residency restrictions of the CNA applicable to adult criminal sex offenders — e.g., an adult criminal sex offender may not reside within 2,000 feet of a school or child-care facility or in any living accommodation with a minor — prevent him from residing with any of his siblings or in most of residential Montgomery County, including every group home for the mentally ill located in Montgomery County.
Miller further claims that, as a result of the residency restrictions of the CNA, the only placement DMHMR has been able to provide for him, so long as he is classified as an adult criminal sex offender, when he is not in DMHMR’s custody, has been in the Dixon Restore Home, a homeless shelter; however, Miller claims that his residing in the homeless shelter puts him at risk of suffering another psychiatric relapse. Specifically, Miller states that each time he has been released from an involuntary commitment and placed in the homeless shelter, “he has quickly decompensat-ed and in the matter of only a few months suffered another psychiatric emergency requiring involuntary commitment.” (Miller’s brief, at p. 16.) Thus, Miller argues, *775 the trial court erred in denying the motions for a TRO and a preliminary injunction because, he says, enforcement of the CNA in a manner that deprives him of the assistance he needs to maintain physical and mental stability constitutes irreparable injury.
The defendants present several arguments in contending that the trial court properly denied the motions for a TRO and a preliminary injunction. The defendants argue, among other things, that, even if the trial court had enjoined the defendants from applying to Miller the residency restrictions of the CNA applicable to adult criminal sex offenders, there is no guarantee that the threats to Miller’s mental and physical health would have been alleviated. The defendants also argue that Miller has other options for obtaining the care he needs that would not require the drastic remedy of a preliminary injunction. Specifically, the defendants contend, among other things, that Miller’s siblings “are free to visit him, feed him, monitor his medication, and to take any other action that they deem necessary or appropriate to continue his health and welfare.” (Defendants’ brief, at p. 15.) Accordingly, the defendants argue, the continued application to Miller of the residency restrictions of the CNA applicable to adult criminal sex offenders does not subject him to imminent and irreparable injury that would justify the issuance of a TRO and a preliminary injunction.
After carefully reviewing the record and briefs and hearing oral arguments of the parties, we conclude that the current state of the evidence does not support a conclusion that continued application of the adult-criminal-sex-offender residency re-strietions of the CNA to Miller will cause him to suffer irreparable injury. Thus, we hold that the trial court did not err in denying the motions for a TRO and a preliminary injunction. Accordingly, we affirm the trial court’s judgment insofar as it denied Miller’s request for a TRO and a preliminary injunction.
Because Miller fails to demonstrate that he would suffer irreparable injury without the requested injunctive relief, we preter-mit as unnecessary any discussion of Miller’s arguments that he satisfied the other factors for issuance of a preliminary injunction, see Holiday Isle, supra, and of the various other constitutional violations Miller alleges within those arguments.

Conclusion

Because Miller’s siblings lack standing to maintain a claim in the underlying action, we dismiss the appeal insofar as it concerns Miller’s siblings. We affirm the trial court’s judgment insofar as it denied Miller’s request for a TRO and a preliminary injunction.
AFFIRMED IN PART AND APPEAL DISMISSED IN PART.
LYONS, WOODALL, STUART, PARKER, and SHAW, JJ., concur.
COBB, C.J., concurs specially.
MURDOCK, J., concurs in the result.
BOLIN, J., not sitting.[6]

. Miller did not appeal from the juvenile court's January 23, 1987, order.

. On motion of the plaintiffs, the trial court entered an order on October 10, 2008, dismissing Correctional Medical Services, Inc., as a defendant and substituting NaphCare, Inc., as a defendant in the case.

. Section 15-20-26, Ala.Code 1975, provides, in pertinent part:
“(a) Unless otherwise exempted by law, no adult criminal sex offender shall establish a residence or any other living accommodation or accept employment within 2,000 feet of the property on which any school, including, but not limited to, an elementary or secondary school and a college or university, or child care facility is located.
[[Image here]]
"(c) No adult criminal sex offender shall establish a residence or any other living accommodation where a minor resides.”

. The defendants’ arguments are set forth in the brief filed by the State defendants — Governor Riley, Attorney General King, Col. Murphy, and District Attorney Brooks; those arguments were adopted and incorporated into the respective briefs filed by the county defendants — Chief Baylor, Sheriff Marshall, and Montgomery County. Commissioner Allen, NaphCare, Inc., and Prison Health Services, Inc., did not file briefs with this Court.

. The plaintiffs raised these arguments in their filing in the trial court entitled "plaintiffs’ opposition to defendants’ motion to dismiss.”