WISE, Justice.
The respondents, Reed Collar and Bonnie Collar, as the parents of Gilbert Collar, a deceased minor, sued the University of South Alabama (“the University”); Zeke Aull, the chief of police for the University; Trevis Austin,, a police officer for the University; and fictitiously named defendants, asserting claims arising from Gilbert’s death on the University’s campus in Mobile. Chief Aull filed a motion to dismiss the claims against him, on the basis that he was immune from suit pursuant to Art. I, § 14, Ala. Const, of 1901, and that, to the extent the complaint could be read as asserting a claim against him in his individual capacity, that claim was due to be dismissed on the ground of State-agent immunity. The trial court denied Chief Aull’s motion to dismiss, and Chief Aull filed a petition for a writ of mandamus requesting this .Court to direct the trial *585 court to vacate its order denying the motion to dismiss and to enter an order dismissing the claims asserted against him. We grant the petition and issue the writ.

Facts and Procedural History

In October 2012, Gilbert was a student at the University. During the early morning hours of October 6, 2012, Gilbert and some other students were talking outside a dormitory at the University. The complaint alleges:
“At some point while they were talking, Gilbert Collar was given a substance that is believed to have included illegal drugs.
“11. Gilbert Collar had a sudden and immediate reaction to the substance he ingested. The reaction caused him either to become extremely hot or to believe that he was very hot. Gilbert Collar lost the ability to fully understand his actions and to reason. As a result, Gilbert Collar took off his clothes and began running into and out of traffic on the campus of the University of South Alabama.”
The complaint also alleges that Gilbert subsequently went to the University’s police station and began hitting the windows of the police station. Gilbert started to walk away from the building but came back and started hitting the door of the police station. Gilbert then again walked away from the police station.
At that time, Officer Austin and a dispatcher were inside the police station. Officer Austin came out of the police station through the door Gilbert had hit, with his weapon drawn. After Officer Austin called to Gilbert, Gilbert started to advance toward the police station and “immediately began acting in an erratic manner.” The complaint further alleges:
“Officer Austin began backing up and Gilbert Collar continued to move toward him, crouching down, jumping up and bounding around....
[[Image here]]
“ ... At no point during the ensuing moments did Gilbert Collar ever touch Officer Austin. On one or more occasions, Gilbert Collar went to the ground and put distance between himself and Officer Austin.
[[Image here]]
“... When Gilbert Collar was a few feet from Officer Austin, and for unexplainable reasons, Officer Austin shot Gilbert Collar. After being shot, Gilbert Collar rose to his feet and walked a short distance before he fell to the ground for the last time and died.
“... Literally seconds after Officer Austin fired the fatal shot, other police officers arrived at the station and were prepared to assist to control the situation and arrest Gilbert Collar, if necessary.
“... Even though Officer Austin had at his disposal less lethal means of force, namely, his physical ability, a baton and pepper spray, he was not provided with option of a [T]aser, a weapon known to be effective for controlling subjects who are acting irrationally for some reason.
“... Defendants Chief Zeke Aull, the University of South Alabama, and others, including Fictitious Parties A-L, failed to provide a [Tjaser, a non-lethal weapon to its police officers, including Officer Austin.”
On December 3, 2012, the Collars sued the University, Chief Aull, Officer Austin, and fictitiously named parties. Count one of the complaint sought injunctive relief from the University and Chief Aull in the form of requiring specific training and equipment for police officers on the University’s campus. Count three alleged negligence claims against the University, Chief Aull, and fictitiously named parties *586 A-L and sought monetary damages. Counts two and four alleged that Officer Austin negligently used excessive force against Gilbert and that, in using excessive deadly force, Officer Austin acted wilfully, beyond his authority, and/or under a mistaken interpretation of existing laws. Finally, count five raised negligence claims against fictitiously named parties M-Z.
On December 18, 2012, the University filed a motion to dismiss the Collars’ claims against it on the ground that it was entitled to State immunity pursuant to Art. I, § 14, Ala. Const, of 1901. The trial court subsequently granted the University’s motion.
On December 27, 2012, Chief Aull filed a motion to dismiss the claims against him. In his motion, Chief Aull asserted that he also was immune from suit pursuant to Art. I, § 14, Ala. Const, of 1901. He also asserted that, to the extent the complaint could be read as asserting a claim against him in his individual capacity, that claim was due to be dismissed on the ground of State-agent immunity.[1] On February 8, 2013, the trial court entered an order denying Chief Aull’s motion to dismiss. On March 4, 2013, Chief Aull filed his petition for a writ of mandamus in this Court.

Standard of Review and Applicable Law

“ As this Court has consistently held, the writ of mandamus is a
“ ‘ “ ‘drastic and extraordinary writ that will be issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.’ ”
“ ‘Ex parte Wood, 852 So.2d 705, 708 (Ala.2002) (quoting Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala.1993)). “ ‘In reviewing the denial of a motion to dismiss by means of a mandamus petition, we do not change our standard of review....’” Drummond Co. v. Alabama Dep’t of Transp., 937 So.2d 56, 57 (Ala.2006) (quoting Ex parte Haralson, 853 So.2d 928, 931 (Ala.2003)).
“ ‘ “In Newman v. Savas, 878 So.2d 1147 (Ala.2003), this Court set out the standard of review of a ruling on a motion to dismiss for lack of subject-matter jurisdiction:
“ ‘ “ ‘A ruling on a motion to dismiss is reviewed without a presumption of correctness. Nance v. Matthews, 622 So.2d 297, 299 (Ala.1993). This Court must accept the allegations of the complaint as true. Creóla Land Dev., Inc. v. Bentbrooke Housing, L.L.C., 828 So.2d 285, 288 (Ala.2002). Furthermore, in reviewing a ruling on a motion to dismiss we will not consider whether the pleader will ultimately prevail but whether the pleader may possibly prevail. Nance, 622 So.2d at 299.’
“ ‘ “878 So.2d at 1148-49.”
“ ‘Pontius v. State Farm Mut. Auto. Ins. Co., 915 So.2d 557, 563 (Ala.2005). We construe all doubts regarding the sufficiency of the complaint in favor of the plaintiff. Drummond Co., 937 So.2d at 58.’
“Ex parte Alabama Dep’t of Transp., 978 So.2d 17, 20-21 (Ala.2007).”
Ex parte Alabama Dep’t of Transp., 978 So.2d 718, 720 (Ala.2007).
“The issue of immunity is a jurisdictional one. ‘This constitutionally guaranteed principle of sovereign immunity, *587 acting as a jurisdictional bar, precludes a court from exercising subject-matter jurisdiction. Without jurisdiction, a court has no power to act and must dismiss the action.’ Alabama State Docks Terminal Ry. v. Lyles, 797 So.2d 432, 435 (2001). Therefore, a court’s failure to dismiss a case for lack of subject-matter jurisdiction based on the doctrine of sovereign immunity may properly be addressed by a petition for the writ of mandamus. See Ex parte Alabama Dep’t of Mental Health & Mental Retardation, 837 So.2d 808, 810-11 (Ala.2002).”
Ex parte Murphy, 72 So.3d 1202, 1205 (Ala.2011).
With regard to claims against State officials in their official capacity, this Court has stated:
“ ‘ “It is settled beyond cavil that State officials cannot be sued for damages in their official capacities. Burgoon v. Alabama State Dep’t of Human Res., 835 So.2d 131, 132-33 (Ala.2002).” Ex parte Dangerfield, 49 So.3d [675,] 681 [ (Ala.2010) ].’
“Ex parte Montgomery Cnty. Bd. of Educ., 88 So.3d 837, 842 (Ala.2012). In Vandenberg v. Aramark Educational Services, Inc., 81 So.3d 326, 332 (Ala.2011), this Court stated:
“ ‘This Court has held that the immunity afforded the State by § 14 applies to instrumentalities of the State and State officers sued in their official capacities when such an action is effectively an action against the State. Lyons v. River Road Constr., Inc., 858 So.2d 257, 261 (Ala.2003). We have specifically “extended the restriction on suits against the State found in § 14 ‘to the state’s institutions of higher learning’ and ha[ve] held those institutions absolutely immune from suit as agencies of the State.” Ex parte Troy Univ., 961 So.2d 105, 109 (Ala.2006) (quoting Taylor v. Troy State Univ., 437 So.2d 472, 474 (Ala.1983)). This § 14 bar also prohibits “actions against officers, trustees, and employees of state universities in their official capacities.” Alabama Agric. & Mech. Univ. v. Jones, 895 So.2d 867, 873 (Ala.2004).’
“In Alabama Department of Transportation v. Harbert International, Inc., 990 So.2d 831, 839-840 (Ala.2008), this Court stated:
“ ‘To determine whether an action against a State officer is, in fact, one against the State, this Court considers
“ ‘ “whether ‘a result favorable to the plaintiff would directly affect a contract or property right of the State,’ Mitchell [v. Davis, 598 So.2d 801, 806 (Ala.1992)], whether the defendant is simply a ‘conduit’ through - which the plaintiff seeks recovery of damages from the State, Barnes v. Dale, 530 So.2d 770, 784 (Ala.1988), and whether ‘a judgment against the officer would directly affect the financial status of the State treasury,’ Lyons [v. River Road Constr., Inc.], 858 So.2d [257] at 261 [ (Ala.2003) ].”
“ ‘Haley [v. Barbour County ], 885 So.2d [783] at 788 [ (Ala,2004) ]. Additionally, “[i]n determining whether an action against a state officer is barred by § 14, the Court considers the nature of the suit or the relief demanded, not the character of the office of the person against whom the suit is brought.” Ex parte Carter, 395 So.2d 65, 67-68 (Ala.1980).’
“This Court also noted in Harbert that the immunity afforded State officers sued in their official capacities is not unlimited:
*588 “ ‘ “[Section 14] immunity from suit does not extend, in all instances, to officers of the State acting in their official capacity. Unzicker v. State, 346 So.2d 931 (Ala.1977). In limited circumstances the writ of mandamus will lie to require action of state officials. This is true where discretion is exhausted and that which remains to be done is a ministerial act. See Hardin v. Fullilove Excavating Co., Inc., 353 So.2d 779 (Ala.1977); Tennessee & Coosa R.R. Co. v. Moore, 36 Ala. 371 (1860). Action may be enjoined if illegal, fraudulent, unauthorized, done in bad faith or under a mistaken interpretation of law. Wallace v. Board of Education of Montgomery Co., 280 Ala. 635, 197 So.2d 428 (1967). If judgment or discretion is abused, and exercised in an arbitrary or capricious manner, mandamus will lie to compel a proper exercise thereof. The writ will not lie to direct the manner of exercising discretion and neither will it lie to compel the performance of a duty in a certain manner where the performance of that duty rests upon an ascertainment of facts, or the existence of conditions, to be determined by an officer in his judgment or discretion. See Barnes v. State, 274 Ala. 705, 151 So.2d 619 (1963).” “ ‘McDowell-Purcell, Inc. v. Bass, 370 So.2d 942, 944 (Ala.1979).
“ ‘Moreover, certain causes of action are not barred by § 14:
“ ‘ “ ‘There are four general categories of actions which in Aland v. Graham, 287 Ala. 226, 250 So.2d 677 (1971), we stated do not come within the prohibition of § 14: (1) actions brought to compel State officials to perform their legal duties; (2) actions brought to enjoin State officials from enforcing an unconstitutional law; (3) actions to compel State officials to perform ministerial acts; and (4) actions brought under the Declaratory Judgments Act ... seeking construction of a statute and its application in a given situation. 287 Ala. at 229-230, 250 So.2d 677. Other actions which are not prohibited by § 14 are: (5) valid inverse condemnation actions brought against State officials in their representative capacity; and (6) actions for injunction or damages brought against State officials in their representative capacity and individually where it was alleged that they had acted fraudulently, in bad faith, beyond their authority or in a mistaken interpretation of law. Wallace v. Board of Education of Montgomery County, 280 Ala. [635] at 639, 197 So.2d 428 [ (1967) ]; Unzicker v. State, 346 So.2d 931, 933 (Ala.1977); Engelhardt v. Jenkins, 273 Ala. 352, 141 So.2d 193 (1962).’ ”•
“ ‘Drummond Co. v. Alabama Dep’t of Transp., 937 So.2d 56, 58 (Ala.2006) (quoting [Ex parte ] Carter, 395 So.2d [65,] 68 [ (Ala.1980) ]) (emphasis omitted). These actions are sometimes referred to as “exceptions” to § 14; however, in actuality these actions are simply not considered to be actions “‘against the State’ for § 14 purposes.” Patterson v. Gladwin Corp., 835 So.2d 137, 142 (Ala.2002). This Court has qualified those “exceptions,” noting that “ ‘[a]n action is one against the [S]tate when a favorable result for the plaintiff would directly affect a contract or property right of the State, or would result in the plaintiff’s recovery of money from the [S]tate.’” Alabama Agric. & Mech. Univ. v. Jones, 895 So.2d 867, 873 (Ala.2004) (quoting Shoals Cmty. Coll. *589 v. Colagross, 674 So.2d 1311, 1314 (Ala.Civ.App.1995)) (emphasis added in Jones).’
“990 So.2d at 839-40.”
Ex parte Moulton, 116 So.3d 1119,1130-32 (Ala.2013). This Court further clarified the sixth “exception” to immunity as follows:
“Indeed, it is well established that actions for damages against State agents in their official or representative capacities are considered actions to recover money from the State and are barred by State immunity under § 14. Harris v. Owens, 105 So.3d 430 (Ala.2012); Ex parte Montgomery Cnty. Bd. of Educ., [88 So.3d 837 (Ala.2012) ]; Vandenberg v. Aramark Educ. Servs., Inc., [81 So.3d 326 (Ala.2011) ]; Ex parte Dangerfield, 49 So.3d 675 (Ala.2010); Lyons v. River Road Constr., Inc., 858 So.2d 257, 261 (Ala.2003); Burgoon v. Alabama State Dep’t of Human Res., 835 So.2d 131, 132-33 (Ala.2002); Ex parte Mobile Cnty. Dep’t of Human Res., 815 So.2d 527 (Ala.2001); Ex parte Butts, [775 So.2d 173 (Ala.2000) ]; Ex parte Alabama Dep’t of Forensic Scis., 709 So.2d 455 (Ala.1997); Ex parte Franklin Cnty. Dep’t of Human Res., 674 So.2d 1277, 1279 (Ala.1996); and Alabama State Docks v. Saxon, 631 So.2d 943, 946 (Ala.1994). Accordingly, to the extent the sixth ‘exception’ can be read as allowing ‘actions for ... damages [to be] brought against State officials in their representative capacity,’ it is an incorrect statement of the law as it pertains to State immunity under § 14.
“The sixth ‘exception,’ as currently set forth in [Alabama Department of Transportation v.] Harbert [International, Inc., 990 So.2d 831 (Ala.2008),] and other authorities, can also be read as allowing ‘actions for injunction ... [to be] brought against State officials in their representative capacity and individually where it was alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law.’ Harbert, 990 So.2d at 840. To the extent that the sixth ‘exception’ as it is now formulated can be read as allowing actions for injunctive relief against State officials or agents in their individual capacity, it is an incorrect statement of the law because ‘a suit for injunctive relief against a State official in his or her individual capacity would be meaningless. This is so because State officials act for and represent the State only in their official capacities.’ Ex parte Dickson, 46 So.3d 468, 474 (Ala. 2010).
“The sixth ‘exception,’ as currently formulated, also allows ‘actions for damages, [to be] brought against State officials ... individually where it was alleged that they had acted fraudulently, in bad faith, beyond their authority or in a mistaken interpretation of law.’ Harbert, 990 So.2d at 840. ‘This Court has recognized that a state officer or employee may not escape individual tort liability by “ ‘arguing that his mere status as a state official cloaks him with the state’s constitutional immunity.’ ” ’ Phillips v. Thomas, 555 So.2d 81, 83 (Ala.1989) (quoting Barnes v. Dale, 530 So.2d 770, 781 (Ala.1988), quoting in turn Tort Liability of State Officials in Alabama, 35 Ala. L.Rev. 153 (1984)). ‘Clearly, a state officer or employee is not protected by § 14 when he acts willfully, maliciously, illegally, fraudulently, in bad faith, beyond his authority, or under a mistaken interpretation of the law.’ Phillips, 555 So.2d at 83. However, actions against State officials or agents in their individual capacities are not without limits. ‘State officers and employees, in their official capacities and individually, also are absolutely immune *590 from suit when the action is, in effect, one against the State.’ Phillips, 555 So.2d at 83. In addition, as discussed in further detail below, a State official or agent may be entitled to State-agent immunity pursuant to Ex parte Cran-man, 792 So.2d 392 (Ala.2000), as to actions asserted against him or her in his or her individual capacity.
“Accordingly, based on the foregoing considerations, this Court today restates the sixth ‘exception’ to the bar of State immunity under § 14 as follows:
“ ‘(6)(a) actions for injunction brought against State officials in their representative capacity where it is alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law, Wallace v. Board of Education of Montgomery County, 280 Ala. 635, 197 So.2d 428 (1967), and (b) actions for damages brought against State officials in their individual capacity where it is alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law, subject to the limitation that the action not be, in effect, one against the State. Phillips v. Thomas, 555 So.2d 81, 83 (Ala.1989).’ ”
Ex parte Moulton, 116 So.3d at 1140-41.

Discussion

Chief Aull argues that the trial court erred when it denied his motion to dismiss counts one and three of the complaint against him on the ground of State immunity.
A. Count One — Injunctive Relief
Chief Aull contends that the trial court erroneously denied his motion to dismiss count one against him, which sought in-junctive relief. Specifically, he asserts that the Collars’ request for injunctive relief did not fall within any of the “exceptions” to § 14 immunity because, he says, it was, in effect, an impermissible claim for monetary damages against the State. Count one asserts:
“28. Police departments on university campuses throughout the State of Alabama require their police officers to attend an approved police academy and receive, at least, minimum standards training from an accredited peace officer training facility. After completion of an accredited police academy, the individual police departments are required to provide follow-up and continued training to its officers.
[[Image here]]
“30. The University of South Alabama is required by law to take all meaningful measures to ensure that its police officers have adequate training, including how to effectuate a lawful arrest or to restrain a person.
“31. The University of South Alabama is also required by law to provide adequate equipment to its police officers to ensure that they can perform their jobs in a manner to effectuate lawful arrests.
“32. Chief Aull, in his capacity as the chief of police of the University of South Alabama Police Department, is required to ensure that the campus police officers are adequately trained and equipped to carry out their duties as police officers.
“33. The University of South Alabama and Chief Aull failed to provide adequate training to Officer Austin and also failed to provide him with a [Tjaser.
“34. Pursuant to well-established Alabama law, it is essential that police officers employed by the University of South Alabama receive adequate training and are provided appropriate equipment in order to ensure that students and other persons are not seriously in *591 jured or killed by police officers employed by the University of South Alabama.
“35. Injunctive relief is needed so that no others will be shot or killed on the campus of the University of South Alabama by officers using excessive force. Immediate and irreparable injury will occur without injunctive relief. The failure of the Court to issue injunc-tive relief could result in imminent and irreparable injury and harm to others. The benefit to the public greatly exceeds the burden to the State by issuance of the sought-after relief.
“WHEREFORE, [the Collars] request that this Court enter an Order for injunctive relief as follows:
“A. Requiring all police officers at the University of South Alabama to receive additional training on the means and methods to adequately control subjects utilizing the least restrictive and harmful means; and
“B. Requiring the University of South Alabama and Chief Aull to provide all necessary equipment, including [TJasers, to the police officers at the University and to provide concomitant training on the safe and appropriate use of [T]asers.
“C. Granting such other relief as may be necessary and appropriate.”
Before we reach Chief Aull’s claim that he is entitled to dismissal of count one on the ground of State immunity, we must first determine whether the Collars have standing to pursue their claim for injunctive relief against Chief Aull.
“ ‘ “Standing represents a jurisdictional requirement which remains open to review at all stages of the litigation.” National Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 255, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994). “ ‘[L]aek of standing [is] a jurisdictional defect.’ ” State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1028 (Ala.1999) (quoting Tyler House Apartments, Ltd. v. United States, 38 Fed.Cl. 1, 7 (Fed.C1.1997)). “[J]urisdictional matters are of such magnitude that we take notice of them at any time and do so even ex mero motu.” Nunn v. Baker, 518 So.2d 711, 712 (Ala.1987).’
“Ex parte Fort James Operating Co., 871 So.2d 51, 54 (Ala.2003).”
Miller v. Riley, 37 So.3d 768, 772 (Ala. 2009).
In Ex parte Alabama Educational Television Commission, [Ms. 1111494, Sept. 27, 2013] — So.3d — (Ala.2013), this Court addressed whether Allan Pizzato, the former executive director of Alabama Public Television (“APT”), and Pauline Howland, the former deputy director and chief financial officer of APT, had standing to pursue claims against APT for violations of the Open Meetings Act, § 36-25A-1 et seq., Ala.Code 1975. The facts in that case indicated that, at the quarterly meeting of the Alabama Educational Television Commission (“the Commission”), held on June 12, 2012, the Commission voted to go into executive session to discuss Pizzato’s character and job performance. After the Commission returned to its regular meeting, both Pizzato’s employment and How-land’s employment were terminated. On July 11, 2012, Pizzato requested material from the Commission pursuant to the Open Records Act, § 36-12-40 et seq., Ala. Code 1975. Subsequently, Pizzato sued the Commission and its commissioners, alleging violations of the Open Meetings Act and the Open Records Act. The Commission and the commissioners moved to dismiss Pizzato’s claims against them. They argued, among other things, that Pizzato did not have standing to bring a claim under the Open Meetings Act. The trial *592 court denied the motion to dismiss to the extent Pizzato sought the civil fines provided for in the Open Meetings Act and to the extent Pizzato sought declaratory and/or injunctive relief against the Commission and against the commissioners in their official capacities. Pizzato later filed a second amended complaint in which he added Howland as a plaintiff. Subsequently, the Commission moved the trial court to certify three controlling questions of law for an immediate permissive appeal. One of those questions was “whether § 36-25A-9(a), Ala.Code 1975, gave Pizzato and Howard standing to bring their claims.” — So.3d at-. The trial court denied the motion for a permissive appeal, and the Commission and the commissioners petitioned for a writ of mandamus. In the main opinion, this Court addressed the standing issue as follows:
“The Commission and the Commissioners argue that although § 36-25A-9(a) allows for enforcement by ‘any Alabama citizen,’ a plaintiff must still satisfy the three requirements for standing set forth in Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992).
“In Lujan, the United States Supreme Court stated:
“‘Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an “injury in fact” — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) “actual or imminent, not ‘conjectural’ or ‘hypothetical.’ ” Second, there must be a causal connection between the injury and the conduct complained of — the injury has to be “fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.” Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 41-42, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976). Third, it must be “likely,” as opposed to merely “speculative,” that the injury will be “redressed by a favorable decision.” ’
“504 U.S. at 560-61 (citations omitted).
“This Court has adopted the Lujan test as the means of determining standing in Alabama. See Ex paHe King, 50 So.3d 1056, 1059 (Ala.2010) (‘Traditionally, Alabama courts have focused primarily on the injury claimed by the aggrieved party to determine whether that party has standing; however, in 2003 this Court adopted the following, more precise, rule regarding standing based upon the test used by the Supreme Court of the United States: “A party establishes standing to bring a ... challenge ... when it demonstrates the existence of (1) an actual, concrete and particularized ‘injury in fact’ — ‘an invasion of a legally protected interest’; (2) a ‘causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be ‘redressed by a favorable decision.’ ” ’ (quoting Alabama Alcoholic Beverage Control Bd. v. Henri-Duval Winery, L.L.C., 890 So.2d 70, 74 (Ala.2003), quoting in turn Lujan, 504 U.S. at 560-61)). See also Muhammad v. Ford, 986 So.2d 1158, 1162 (Ala.2007) (stating that, ‘[i]n [Henri-Duval], this Court adopted a more precise rule regarding standing articulated by the United States Supreme Court’ in Lujan); Town of Cedar Bluff v. Citizens Caring for Children, 904 So.2d 1253, 1256 (Ala.2004) (stating that the Court in Henri-Duval had ‘effectively restated’ the standard for standing, using the three-pronged test from Lu-jan ).
“Applying the Lujan test here, we conclude that Pizzato and Howland do *593 not have standing to bring this action because they have failed to demonstrate ‘a likelihood that [their alleged] injury will be “redressed by a favorable decision.” ’ Henri-Duval, supra. Pizzato and Howland argue that they were injured by the Commission’s termination of their employment and that that ‘termination was the direct result and consequence of the Commissioners’ violation of the Open Meetings Act.’ Pizzato and Howland’s brief, at 21. They also argue:
‘“Pizzato amended his complaint to seek the relief mandated by statute and by the Circuit Court. Pizzato is both a citizen and the former Executive Director of APT, and his termination resulted directly from a violation of the Open Meetings Act. As such, he has every right to demand the civil fines specified in Ala.Code § 36-25A-9(g) in addition to whatever other relief the Circuit Court deems appropriate.’
“Pizzato and Howland’s brief, at 23.
“In Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 186, 120 S.Ct, 693, 145 L.Ed.2d 610 (2000), the Supreme Court held that civil penalties can serve as redress for standing purposes ‘[t]o the extent that they encourage defendants to discontinue current violations and deter them from committing future ones.’ The Supreme Court distinguished Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 106, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), stating:
‘“Steel Co. established that citizen suitors lack standing to seek civil penalties for violations that have abated by the time of suit. We specifically noted in that case that there was no allegation in the complaint of any continuing or imminent violation, and that no basis for such an allegation appeared to exist.’
“Friends of the Earth, 528 U.S. at 187 (citation omitted).
“Here, the only specific relief Pizzato and Howland requested was the civil fines provided for in § 36-25A-9(g). Like the injury in Steel Co., however, the alleged injury here was caused by an alleged one-time violation of the Open Meetings Act that was wholly past when Pizzato and Howland’s action was filed. Pizzato and Howland have not alleged any ‘continuing or imminent violation,’ nor does any ‘basis for such an allegation appear to exist.’ Friends of the Earth, 528 U.S. at 187. Thus, as in Steel Co., Pizzato and Howland’s request for civil fines ‘seeks not remediation of [their] injury ... but vindication of the rule of law.’ Steel Co., 523 U.S. at 106. In fact, Pizzato and Howland argue:
“ ‘To argue as [the Commission and the Commissioners] have argued that Pizzato has suffered no redressable injury is to argue that there is no public policy interest or value to an injured party in seeing wrongdoers held accountable for failing to follow the law. Hearing such an argument advanced by [the Commission and the Commissioners] is offensive to those who believe their government can— and should — do better. This callous and nonchalant attitude towards a clear violation of the law is indicative of the very reason this action must be maintained. Even if such a judgment will not make Pizzato whole, the value of enforcing the law cannot be viewed through the narrow lens of costs and benefits to those wronged by the violation. The significance and value of requiring Commissioners to comply with the Open Meetings Act includes the significance and value to Pizzato, *594 but encompasses the general public as well. The fact that such value evades easy quantification by [the Commission and the Commissioners] does not diminish its importance.’
“Pizzato and Howland’s brief, at 23-24. Fines sought for such purposes do not satisfy the redressability prong of the Lujan test. See Steel Co., 523 U.S. at 107 (‘Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement.’). Thus, Pizzato and Howland have failed to establish standing under the Lujan test for their claims against the Commission and the Commissioners.”
(Footnotes omitted.)
In the present case, count one of the complaint alleged that the relief requested “is needed so that no others will be shot or killed on the campus of the University of South Alabama by officers using excessive force.... The failure of the Court to issue injunctive relief could result in imminent and irreparable injury and harm to others.” (Emphasis added.) We empathize with the Collars’ desire to prevent future injury and future harm to others under similar circumstances. However, the fact remains that, as was the case in Ex parte Alabama Educational Television Commission, the Collars cannot satisfy the re-dressability requirement of the test established in Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), as to their claim for injunctive relief. Providing additional training and “Tasers” to the University’s law-enforcement officers will not remedy the injury suffered by the Collars in this case. Therefore, the Collars have not established that, under Lujan, they have standing to pursue their claims against Chief Aull for injunctive relief. Thus, Chief Aull is entitled to the dismissal of count one of the complaint.
B. ■Count Three — Negligence Claim
Chief Aull argues that, under § 14, he is immune from suit as to the Collars’ claim seeking money damages against him in his official capacity.[2] In *595 count three, the Collars alleged that the University, Chief Aull, and fictitiously named parties A-L had breached their duties to the general public:
“a. By failing to provide adequate training to Officer Austin and its other police officers, namely, training that he, as a sworn officer, is not to use force greater than that necessary to effectuate an arrest and/or to use the least damaging or deadly means of force as the situation presents;
“b. By failing to provide adequate training to Officer Austin and its other police officers to use physical and verbal means to control a subject who is under the influence of alcohol or drugs or who is mentally unstable, or, only when appropriate, to use his baton or pepper spray to control a situation, such as the one at issue in this ease;
“c. By failing to provide adequate training to Officer Austin and its other police officers to call for and wait for assistance from other officers, employees of the University or citizens in order to effectuate an arrest without the use of deadly force; and
“d. By failing to provide Officer Austin and its other officers with [Tjasers and with adequate training in the use and implementation of [Tjasers to assist with arresting subjects who are under the influence of drugs or alcohol or who are mentally unstable.”
Count three further alleges that the University, Chief Aull, and the fictitiously named parties had “negligently acted or negligently failed to act, thereby creating circumstances which proximately caused the death of Gilbert Collar” and sought damages from the University, Chief Aull, and the fictitiously named parties.
As this Court stated in Ex parte Moul-ton: ' “[Ijt is well established that actions for damages against State agents in their official or representative capacities are considered actions to recover money from the State and are barred by State immunity under § 14.” 116 So.3d at 1140. Therefore, Chief Aull is entitled to State immunity as to the Collars’ claims seeking monetary damages against him in his official capacity, and there is no possibility that the Collars might possibly prevail on such a claim. Thus, Chief Aull is entitled to the dismissal of the negligence claim asserted in count three. See Ex parte Burnell, 90 So.3d 708 (Ala.2012) (holding that the defendant had established a clear legal right to the dismissal of the complaint against him because the claims in the complaint were barred by the doctrine of State immunity and because the defendant was acting in the line and scope of his duties as a deputy sheriff at the time the plaintiff was injured); Ex parte Murphy, supra (holding that the director of the Alabama Department of Public Safety had a clear legal right to the dismissal of the plaintiffs’ claims seeking monetary damages against him in his official capacity because the claims were barred by the doctrine of State immunity).

Conclusion

Chief Aull has a clear legal right to the dismissal of counts one and three of the complaint against him. Therefore, we grant Chief Aull’s petition for a writ of mandamus, and we direct the trial court to *596 vacate its order denying Chief Aull’s motion to dismiss and to grant Chief Aull’s motion to dismiss counts one and three of the complaint against him.
PETITION GRANTED; WRIT ISSUED.
MURDOCK and BRYAN, JJ., concur.
MAIN, J., concurs in part and concurs in the result.
BOLIN, J., concurs in the result.
PARKER, J., concurs in the result in part and dissents in part.
MOORE, C.J., dissents.
STUART, J., recuses herself.

. See infra note 2.

. In their opposition to the motion to dismiss and in their brief to this Court, the Collars state generally that they are suing Chief Aull in both his official and his individual capacities. They also assert that Chief Aull is not entitled to State-agent immunity as to the individual-capacity claims against him because, they say, he acted beyond his authority and failed to discharge his duties pursuant to specific rules and regulations. However, the Collars did not indicate anywhere in the complaint that they were suing Chief Aull in his individual capacity or that they were attempting to recover money damages from Chief Aull's personal assets.
"A claim against an employee in his or her individual capacity, however, does not seek to recover damages from the governmental entity. See Gamble v. Florida Dep't of Flealth & Rehabilitative Servs., 779 F.2d 1509, 1513 (11th Cir.1986) ('Whether a state officer is being sued for damages in an official or an individual capacity is not mere semantics; the question is whether the plaintiff is reasonably seeking relief from the state coffers or from the individual’s assets.’ (quoted in Ex parte Troy Univ., 961 So.2d 105, 110 (Ala.2006))).”
Sutiles v. Roy, 75 So.3d 90, 98 (Ala.2010). Additionally, in count four of their complaint, which alleged claims against Officer Austin, the Collars specifically allege: "Officer Austin acted beyond his authority as a sworn police officer by failing to discharge his duties, pursuant to the specific and detailed rules and regulations, including the policies and procedures of his own department and the policies and procedures established by State law.” However, the complaint did not include any such allegations against Chief Aull. Further, the only reference to Chief Aull’s capacity is included in count one, which alleged:
"Chief Aull, in his capacity as the chief of police of the University of South Alabama Police Department, is required to ensure that [officers] can perform their jobs in a manner to effectuate lawful arrests.”
*595 Thus, the complaint does not state a claim against Chief Aull in his individual capacity. Cf. Ex parte Troy Univ., 961 So.2d 105, 110 (Ala.2006) (holding that “the nature of the claims" against one of the defendants and "the course of the proceedings” showed that the plaintiffs in that case were proceeding against that defendant in her official capacity). Accordingly, we pretermit any discussion regarding whether Chief Aull, in his individual capacity, would be entitled to State-agent immunity.